**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

GISELA GONZALEZ MERICAL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE JOINT CORP.,

Defendant.

Case No. 1:26-cv-00974-KES-SAB

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: June 8, 2026
Time: 1:30 p.m.
Judge: Hon. Kirk E. Sherriff
Crtrm: Room 6, 7th Floor

Action Filed: February 4, 2026

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION .......... 1

LEGAL STANDARD .......... 1

ARGUMENT .......... 3

II. PLAINTIFF SATISFIES ARTICLE III'S STANDING REQUIREMENTS .......... 3

A. Plaintiff Alleges a Concrete, Particularized Injury .......... 4

B. Plaintiff Possesses a Cognizable Privacy Interest in Her Health Information .......... 5

III. PLAINTIFF SUFFICIENTLY STATES HER CLAIMS UNDER RULE 12(b)(6) .......... 7

A. Plaintiff Never Consented To Defendant's Disclosure Of Her PHI .......... 7

1. Plaintiff never possessed actual notice of any agreement to disclose her appointment details. .......... 8

2. Defendant's scrollwrap agreement is unenforceable under California contract law. .......... 9

a. Reasonably Conspicuous Notice .......... 10

b. Unambiguous Manifestation of Assent .......... 11

B. Counts I–IV Do Not Fail Because Plaintiff Did Not Provide Consent .......... 13

C. Defendant is Not Shielded by the Party Exemption .......... 13

1. CIPA Does Not Provide the Same Party Exemption as the ECPA. .......... 13

2. The Crime-Tort Exception Applies to Plaintiff's ECPA Claim. .......... 14

D. Plaintiff States a Claim Under Section 632 of CIPA .......... 15

E. Plaintiff States a Claim for Invasion of Privacy Under the California Constitution .......... 16

F. Plaintiff Should Be Given Leave to Amend In the Case of Dismissal .......... 18

CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 14

*Beltran v. Drs. Med. Ctr. Of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) .......... 5

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 8, 10, 11, 12

*Branca v. Nordstrom, Inc.*,
2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) .......... 2

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 8, 12

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 6, 13, 15

*Camplisson v. Adidas Am., Inc.*,
--- F. Supp. 3d ----, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) .......... 2

*Carruth v. KD Creatives, Inc.*,
2025 WL 2623291 (E.D. Cal. Sept. 11, 2025) .......... 9

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 8, 9, 10

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 17

*Crano v. Sojern, Inc.*,
2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......... 5

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 5

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 16

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 4, 5, 14

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ........ 18

*Flanagan v. Flanagan*,
41 P.3d 575 (Cal. 2002) ........ 15

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 3, 6

*Gabrielli v. Motorola Mobility LLC,*
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 4, 18

*Gaige v. Exer Holding Co.*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) ........ 14

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........ 8, 10, 11, 12

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ........ 2

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 3

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) ........ 5

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ........ 3

*Hernandez v. Event Ticket Ctr., Inc.*,
2026 WL 618252 (E.D. Cal. Mar. 5, 2026) ........ 10, 11

*Hernandez v. Hillsides, Inc*
211 P.3d 1063 (Cal. 2009) ........ 17

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 6

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ........ 17

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ........ 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 3, 7, 17

*In re Google Assistant Priv. Litig*
457 F. Supp. 3d 797 (N.D. Cal. 2020)........ 13

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ........ 15

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)........ 6

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026)........ 4, 5

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........ 15

*Keebaugh v. Warner Bros. Entmt. Inc.*,
100 F.4th 1005 (9th Cir. 2024)........ 9, 10

*Krzyzek v. OpenX Techs., Inc.*,
--- F. Supp. 3d ----, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026)........ 3

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ........ 15

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 16

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025)........ 7

*Lee v. Ticketmaster L.L.C.*,
817 Fed. App'x 393 (9th Cir. 2020)........ 12

*Lopez v. Terra's Kitchen, LLC*,
331 F. Supp. 3d 1092 (S.D. Cal. 2018) ........ 8, 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 2

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........ 15

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022)........ 14, 16

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. July 17, 2023)........ 4, 5, 6

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)........ 9

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ........ 1, 7

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ........ 9

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. June 3, 2024) ........ 3

*Plaintiff's claims. Hassid v. Alex & Ani, LLC*,
--- F. Supp. 3d ----, 2026 WL 160535 (C.D. Cal. Jan. 20, 2026) ........ 4

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 2, 3, 7

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ........ 6

*Proassurance Specialty Ins. Co. v. Ansari*,
2026 WL 472634 (E.D. Cal. Feb. 18, 2026) ........ 18

*R.C. v. Walgreens Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 6, 17

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ........ 14

*Ramirez v. LasikMD USA, Inc.*,
2026 WL 194855 (S.D. Cal. Jan. 26, 2026) ........ 6

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) ........ 8

*Rocha v. Urban Outfitters, Inc.*,
2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ........ 11

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 7

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ........ 17

*Rusow v. SkinSpirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ........ 6, 16, 17

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 2

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D Cal. Jan. 27, 2026) ........ 7

*Serrano v. Open Road Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) ........ 10

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ........ 7

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 12

*Silvia Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ........ 7

*Smallwood v. Dep't of Veterans Affairs*,
2026 WL 472986 (E.D. Cal. Feb. 19, 2026) ........ 18

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 15, 16

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ........ 15

*Smith v. Facebook, Inc*
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 3

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 17

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ........ 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 2, 3

*Valenzuela v. Keuring Green Mtn., Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 13

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ........ 2

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ........ 8

*Wooten v. BioLife Plasma Servs. L.P.*
807 F. Supp. 3d 1139 (E.D. Cal. 2025) ........ 7

**STATUTES**

18 U.S.C. § 2511 ........ 14

Cal. Pen. Code § 631(a) ........ 13

Cal. Pen. Code § 632 ........ 16

Cal. Pen. Code § 632(c) ........ 15

**RULES**

Fed. R. Civ. P. 8(a)(2) ........ 1

Fed. R. Civ. P. 12(b)(1) ........ 1, 2

Fed. R. Civ. P. 12(b)(6) ........ 1, 2

Fed. R. Civ. P. 15(a) ........ 18

## INTRODUCTION

"Few subject areas are more personal and more likely to implicate privacy interests than that of one's health or genetic make-up." *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998). This case concerns the unauthorized exploitation of precisely that kind of deeply sensitive information. Defendant surreptitiously violated the privacy rights of users of www.thejoint.com (the "Website") by covertly deploying tracking technologies from Google, TikTok, Microsoft, and TradeDesk (collectively, "Third Parties") to intercept patients' personally identifiable information ("PII") and sensitive medical data for Defendant's own commercial benefit without users' knowledge or consent. *See* Complaint ("Compl.") (ECF No. 1) ¶¶ 3, 11, 23, 28, 105, 142.

Unbeknownst to its patients, Defendant installed hidden tracking code that transmitted detailed appointment-related information to third-party advertising and data broker platforms in real time. The intercepted data included, among other things, patients' email address, phone number, name, clinic location, and purpose of appointment (e.g., shoulder pain). *Id.* ¶ 104–05. This information—appointments for chiropractic treatment—is plainly medical in nature and falls squarely within the core privacy interests protected by California law.

Defendant does not meaningfully contest these facts. Instead, Defendant's principal argument in support of dismissal of Plaintiff's claims rests on an assertion that Plaintiff consented to its Privacy Policy and Terms and Conditions. That is wrong. Not a single user of Defendant's Website is required, at any stage, to affirmatively consent to its policies. *See* Westcot Decl. ¶ 6–7. And Defendant has provided no evidence that Plaintiff has done so. Accordingly, Defendant's Motion does not meaningfully identify any pleading deficiency and instead relies on misstatements of both law and fact. The Complaint more than satisfies what is required under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to state viable claims under the ECPA, CIPA, and California's Constitution. Defendant's Motion should be denied in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual

allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Article III, a plaintiff must "have suffered an 'injury in fact' that is both 'concrete and particularized.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Concrete harms include tangible harms as well as intangible harms, so long as an intangible harm "bears a 'close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Camplisson v. Adidas Am., Inc.*, --- F. Supp. 3d ----, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "If the challenge to jurisdiction is a facial attack ... the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at *2 (S.D. Cal. Oct. 9, 2015) (internal citation and quotation omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### II. PLAINTIFF SATISFIES ARTICLE III'S STANDING REQUIREMENTS

Defendant argues that Plaintiff cannot satisfy Article III standing because "routine web tracking, when standing alone, does not establish the concrete harm needed for Article III standing." MTD at 8. Defendant misconstrues Plaintiff's allegations.

The injuries suffered by a plaintiff must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270–271 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words . . . [i]t is not necessary . . . for a plaintiff asserting such a claim to plead or establish *the elements* of a traditional cause of action, but rather, only that an analogous harm exists."); *accord TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) ("*Spokeo* does not require an exact duplicate in American history and tradition."). As recognized by the Supreme Court, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC*, 594 U.S. at 425. In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress are instructive." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016). Specifically, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa*, 153 F.4th 784, 789 (9th Cir. 2025) (quotations omitted). The Ninth Circuit is in accord, acknowledging that "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quotations omitted). This "right to privacy" includes an "individual's control of information concerning his or her person." *Id.* (quotations omitted); *see also Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *2 (N.D. Cal. Jan. 29, 2026) ("The Court finds that Plaintiff has alleged the violation of a privacy interest that bears a 'close relationship' to traditional harms – *i.e.*, the loss of the ability to control information about himself") (collecting cases); *Krzyzek v. OpenX Techs., Inc.*, --- F. Supp. 3d ----, 2026 WL 206855, at *2 (N.D. Cal. Jan. 27, 2026) (holding the same); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (same); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557,

579 (N.D. Cal. 2025) (same); *Gabrielli*, 2025 WL 2494368, at *6 (same).

**A. Plaintiff Alleges a Concrete, Particularized Injury**

Defendant argues that Plaintiff failed to establish an injury because she did not allege "that her PHI or PII was collected or disclosed by Defendant." MTD at 8–10. That is wrong and ignores Plaintiff's allegations.

At the outset, the use of "hypothetical users and visitors" alongside corresponding screenshots and well-pled facts do not discount Plaintiff's claims. *Hassid v. Alex & Ani, LLC*, --- F. Supp. 3d ----, 2026 WL 160535, at *2 (C.D. Cal. Jan. 20, 2026) ("Defendant contends that plaintiff has not alleged an injury in fact . . . because the Complaint contains only general allegations about what might happen if someone were to visit the Website, and merely describes hypothetical users and visitors . . . . Defendant's contentions are unpersuasive.") (cleaned up). Here, Plaintiff alleges that she accessed the Website, provided Defendant with "her full legal name, phone number, email address, clinic of choice, and other information" in the process of "book[ing] an appointment for chiropractic care." Compl. ¶ 10. Defendant enabled a multitude of outside entities, including Google, Microsoft, TikTok, and TradeDesk, in intercepting, disclosing, storing, and even selling Plaintiff's patient information. *Id.* ¶¶ 4, 23, 30. This information, initiated by Source Code embedded on the Website, transmits information in the form of 'custom events,' full-string URLs, button clicks, and more. *See id.* ¶¶ 36, 50, 76, 84, 101, 104; *see also* Figs. 5–10 (real transmissions from each respective third party). Furthermore, in addition to the disclosure of Plaintiff's name, email address, and phone number, the disclosures are further attributed to patient identity through the disclosure of numerous identifiers such as auid/cid, cookie identifiers, and device identifiers. *Id.* ¶¶ 100–01. The end result is simple, "Third Parties are readily able to identify the exact patient who seeks chiropractic care, and where they seek it." *Id.* ¶ 105. Plaintiff had her information disclosed in this precise manner when she booked her medical appointment. Nothing more is required. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. July 17, 2023); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) (finding standing based on allegations of disclosure of health information); *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026) (finding standing based on allegations of disclosures of retail site

purchases); *Crano v. Sojern, Inc.*, 2025 WL 2689267, at *6 (N.D. Cal. Sept. 19, 2025) (denying motion to dismiss for lack of Article III standing in case where hotel booking information was allegedly disclosed).

The authority relied upon by Defendant is unpersuasive. Defendant points to instances where allegations were so devoid of facts it was impossible to discern whether plaintiffs sought healthcare. *See Beltran v. Drs. Med. Ctr. Of Modesto*, 2025 WL 1635467, at *5 (E.D. Cal. June 9, 2025) ("Plaintiffs do not describe the types of searches they conducted or the webpages they viewed . . . . Plaintiffs have not alleged that their browsing history on the Website related to the provision of healthcare or patient status"); *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025) ("Plaintiff has not alleged that her browsing history on the Website related to the provision of healthcare or patient status"); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 838 (N.D. Cal. 2024) (finding no standing where plaintiffs provided "no details about their investigation, nor d[id] they explain" how their information was intercepted by Google). Crucially, these cases did not involve instances where plaintiffs booked medical appointments. Rather, it was impossible to discern exactly what inputs were submitted within a free-roaming search bar. But here, the described harm is particularized; Defendant disclosed Plaintiff's precise appointment details in relation specifically to chiropractic care. Compl. ¶¶ 11, 104–05, 108. Courts merely require allegations sufficient to describe the "nature of the information at issue." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. July 17, 2023) (quotations omitted). Plaintiff has done so. Other courts in this Circuit have found comparable allegations sufficient to support the injury requirement. *See, e.g.*, *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) (finding standing based on allegations of disclosure of health information); *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026) (finding standing based on allegations of disclosures of retail site purchases); *Crano v. Sojern, Inc.*, 2025 WL 2689267, at *6 (N.D. Cal. Sept. 19, 2025) (denying motion to dismiss for lack of Article III standing in case where hotel booking information was allegedly disclosed).

### B. Plaintiff Possesses a Cognizable Privacy Interest in Her Health Information

Defendant argues that Plaintiff allegations are akin to the loss of basic contact information,

over which she has no reasonable expectation of privacy. MTD at 10–12. That is wrong.

Numerous courts have made clear that consumers possess a reasonable expectation of privacy in their private health information. *See, e.g.*, *Frasco*, 349 F.R.D. at 580 (finding standing where plaintiffs alleged "that their highly personal health information was disclosed without their consent"); *R.C. v. Walgreens Co.*, 733 F. Supp. 3d 876, 889–895 (C.D. Cal. 2024) (declining to dismiss invasion of privacy claim where "IP address information" was "*paired with* [] private health information conveyed by [plaintiffs'] browsing and shopping activities") (emphasis in original); *Rusow v. SkinSpirit Essential LLC*, 2025 WL 4657637, at *13 (N.D. Cal. Oct. 15, 2025) (concluding that online users possess a "reasonable expectation of privacy over their medical information"); *Ramirez v. LasikMD USA, Inc.*, 2026 WL 194855, at *2 (S.D. Cal. Jan. 26, 2026) ("The unauthorized disclosure of personally identifiable, confidential medical information is a sufficiently concrete and particularized harm for standing.").

The harm that Plaintiff complains of is not merely the disclosure of her contact information by itself. Rather, Plaintiff makes clear that Defendant revealed her patient status in a medical context. *See* Compl. ¶¶ 3–4, 12, 25, 50, 108, 173–74. Defendant attempts to brush over this material aspect. For example, Defendant cites to numerous cases which held that basic contact information or identifiers, without more, did not give rise to an expectation of privacy. Defendant cites to *I.C. v. Zynga, Inc.*, where the court held that the disclosure of basic contact information in relation to a gaming application did not give rise to an injury sufficient to confer Article III standing. 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022). Numerous courts have differentiated these types of cases. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 951 (N.D. Cal. 2023) (describing *Zynga* as "largely distinguishable"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023) (holding that *Zynga* does "not compel a different result."). Notably, all of cases relied upon by Defendant concern the disclosure of basic contact information not related to the provision of medical care. *See Mikulsky*, 682 F. Supp. 3d at 864 (conclusory allegations of "personal information" not sufficient to infer whether such information was "protected or whether it was merely information akin to basic contact information"); *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1103 (C.D. Cal. 2025) (device fingerprinting on retail site did not involve reasonable

expectation of privacy); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) (conclusory descriptions of "confidential" and "private" information submitted on retail site not sufficient to invoke standing). And further, Defendant's citation to *In re Facebook* supports Plaintiff's position, as the court found the allegations to be sufficient to convey Article III standing. 956 F.3d at 598.

Finally, Defendant cites to *Wooten v. BioLife Plasma Servs. L.P.*, where this Court held that the "one-time collection of IP and email addresses" was not a concrete harm. 807 F. Supp. 3d 1139, 1146 (E.D. Cal. 2025). But as pointed out by the Court, "the invasive nature of the information collected was crucial to *Facebook*'s holding." *Id.* at 1145. This reaffirms the general principle that Article III standing is a context-specific analysis. *See Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) ("The sensitivity of the information at issue is also relevant in determining whether the plaintiff has adequately pleaded Article III injury."). Here, "few areas are more personal and more likely to implicate privacy interests than that of one's health or genetic make-up." *Norman-Bloodsaw*, 135 F.3d at 1269; *see also Silvia Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) (There are thus at least two ways tracking technologies may result in highly offensive conduct. First, the information collected could be especially sensitive, for example health or financial information."). The facts of this case are in line with similar cases that have held the disclosure of medical information to be sufficient for establishing Article III standing. *See, e.g.*, *Semien v. PubMatic Inc.*, 2026 WL 216333, at *4 (N.D Cal. Jan. 27, 2026) (finding standing where "Plaintiffs allege[d] that the PubMatic pixel intercepts communications that can include sensitive information like health status and treatment"); *Shah*, 2026 WL 216334, at *3 ("[T]he type of information allegedly collected here . . . topics like nutrition and fitness tracking—could plausibly be understood at this stage of the proceedings to be 'embarrassing, invasive, or otherwise private information.'") (quoting *Popa*, 153 F.4th at 791)).

## III. PLAINTIFF SUFFICIENTLY STATES HER CLAIMS UNDER RULE 12(b)(6)

### A. Plaintiff Never Consented To Defendant's Disclosure Of Her PHI

"Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025)

(quotation omitted). The burden to prove consent rests with Defendant. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021). To determine whether parties possess an enforceable contract with one another, "federal courts apply state-law principles of contract formation." *See, e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). This analysis applies equally to contracts made online or over the internet. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) ("As we have acknowledged many times, although online commerce has presented courts with new challenges, traditional principles of contract still apply.").

Under California law[1], an agreement is enforceable only if there exists "actual or constructive notice of the agreement and the parties [] manifest mutual assent." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (quotations omitted). Here, Defendant has fallen woefully short of carrying its burden. Defendant repeatedly states that Plaintiff provided affirmative consent to Defendant's pixel and analytics practices. *See, e.g.*, MTD at 13 ("Plaintiff knowingly and affirmatively consented . . . when she checked the box"). This claim is entirely unsubstantiated and contrary to Plaintiff's allegations. *See* Westcot Decl. ¶¶ 6–7; Compl. ¶¶ 10–11, 29, 96, 153, 156, 167.

### 1. <u>Plaintiff never possessed actual notice of any agreement to disclose her appointment details.</u>

"Unless [a] website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract" can only be based on an inquiry notice theory. Actual notice is often difficult to prove. *See Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1099 (S.D. Cal. 2018) (finding no actual notice present where "Defendant [did] not adduce[] any evidence" to show otherwise). Absent a submission of evidence by the moving party, actual notice tends to be limited to instances of party admission or compelling circumstances. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 402 (2d Cir. 2004) (finding actual notice where "Verio admitted that . . . it was fully aware of the terms on which Register offered the access."); *Sw. Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761, at *7 (N.D. Tex. Sept. 12, 2007) (holding that continued

[1] Plaintiff contends that California law applies. Regardless, there exists "no differences . . . in the law of the different states as to internet contract formation." *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025).

use of a website after receiving a cease-and-desist letter constituted "actual knowledge of the Terms").

Although Defendant provides an accompanying declaration alongside its motion, it provides no evidence that Plaintiff possessed ***actual*** notice of Defendant's privacy policy. Nor does Plaintiff concede facts that would otherwise indicate she was actually aware of Defendant's policies. To the contrary, Plaintiff holds firm that Defendant acted without her "knowledge or consent." Compl. ¶¶ 29, 172. This representation, without evidence to the contrary, is wholly sufficient to demonstrate a lack of actual notice. *See Lopez*, 331 F. Supp. 3d at 1099 ("Plaintiff represents that he did not see, let alone read, the Terms & Conditions . . . . Accordingly, the Court finds that Plaintiff did not have actual notice").

**2. <u>Defendant's scrollwrap agreement is unenforceable under California contract law.</u>**

Absent actual notice, a website operator may proceed "on an inquiry notice theory to prove the user's assent." *Carruth v. KD Creatives, Inc.*, 2025 WL 2623291, at *3 (E.D. Cal. Sept. 11, 2025). Under this theory, an enforceable agreement may be found "only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024) (internal quotations omitted). In conducting this analysis, courts focus on the type of online agreement at hand. *See Keebaugh v. Warner Bros. Entmt. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). The Ninth Circuit has classified two broad categories on internet contracts:

> Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or click-through) agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen.

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014) (cleaned up).

Courts routinely find browsewrap agreements unenforceable and clickwrap agreements enforceable. *Chabolla*, 129 F.4th at 1154. However, an intermediary type of contract also exists. A

"sign-in wrap lives somewhere in the middle: the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Id.* (quotations omitted). Here, when viewing Defendant's own exhibits, it is clear that its agreement is sign-in wrap. Defendant's proffered agreement contains a checkbox with links to its privacy policy and terms and conditions, which are not forced to be read before a patient clicks the "Claim Your Offer Now" button. MTD at 2–3. As such, it is subject to the demands of inquiry notice.[2]

**a. Reasonably Conspicuous Notice**

"The first step of the inquiry-notice internet contract formation test asks whether the website provides reasonably conspicuous notice of the terms." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (quotation omitted). The test has "two aspects: the visual design of the webpages and the context of the transaction." *Id.* Regarding visual design, notice "must be displayed in a font size and format such . . . that a reasonably prudent Internet user would have seen it." *Keebaugh*, 100 F.4th at 1014 (quotation omitted). There is no bright line test, and "even minor differences . . . may make the difference in this fact-intensive analysis." *Godun*, 135 F.4th at 710. Factors to be considered are: "(1) the size of the text; (2) the color of the text compared to the background; (3) the location of the text and its proximity to where the user clicks to consent; (4) the obviousness of an associated hyperlink; and (5) other elements . . . which clutter or obscure the textual notice." *Hernandez v. Event Ticket Ctr., Inc.*, 2026 WL 618252, at *4 (E.D. Cal. Mar. 5, 2026). Next, in considering the "context of the transaction, courts consider whether the reasonable user contemplates entering into a forward-looking relationship." *Id.* at *3. "Consumers typically do not anticipate an ongoing contractual relationship after a one-time purchase." *Id.*

Here, Defendant's agreement is not reasonably conspicuous. When looking at the advisal located in the Westcot Decl., Exs. A–B, the hyperlinks to the Privacy Policy and Terms and Conditions have a white font that is not differentiated from the surrounding text. *See* Westcot Decl. ¶¶ 3–4, Exs. A–B; *see also Berman*, 30 F.4th at 857 (noting that customary design "include[s] the

[2] When conducting this analysis, courts within the Ninth Circuit have "repeatedly emphasized that because online providers have complete control over the design of their websites, they bear the responsibility to put users on notice." *Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1095 (C.D. Cal. 2023) (internal quotations omitted).

use of a contrasting font color (typically blue) and the use of all capital letters"). Crucially, and regardless of advisal variant, the links are not boldened or presented in a larger font than surrounding text. *See Godun*, 135 F.4th at 711 ("The advisal text is printed in relatively small text"). But perhaps most telling is the general "clutter" that the hyperlinks are presented with. MTD at 3; Westcot Decl. Exs. A–B. Regardless of variation, the links are presented beneath a longwinded agreement that, at the outset, is an agreement to receive "marketing and promotional text messages" rather than an agreement to accept any terms or conditions. *See Rocha v. Urban Outfitters, Inc.*, 2024 WL 393486, at *5 (N.D. Cal. Feb. 1, 2024) (finding advisal unenforceable because, in part, "other clickable boxes such as an option to opt-in to receive text messages" attracted the attention of the user). The advisal even assures users that "Consent is not a condition of purchase." *See* Westcot Decl., Ex. A. This implies that checking the box is fully optional (which it is), and directly contradicts Defendant's holding that users "are required to check a box" agreeing to its policies. MTD at 13.

Finally, the context of the transaction points squarely in Plaintiff's favor. As evidenced by the language of the "New Patient Special," the booking process contemplates a one-time purchase of chiropractic care at a discounted price. *See Hernandez*, 2026 WL 618252, at *4 ("Here, plaintiffs made a one-time concert ticket purchase."). Therefore, this factor points in favor of finding that Plaintiff was not on inquiry notice. *See id.*

**b. Unambiguous Manifestation of Assent**

"The second step of the inquiry-notice internet contract formation test asks us to consider whether any action taken by the internet user—such as clicking a button or checking a box—unambiguously manifested his or her assent." *Godun*, 135 F.4th at 710 (cleaned up). To manifest assent, a user must be "explicitly advised that the act of clicking will constitute assent." *Berman*, 30 F.4th at 857. In simple terms, this means explicit direction that by taking some sort of action, a user is agreeing to some terms. The Ninth Circuit "clear[ed] up any remaining confusion: an advisal that simply states that 'I understand and agree to the Terms and Conditions' but fails to indicate to the user what action constitutes assent is not enough to invite an unambiguous manifestation of assent." *Godun*, 135 F.4th at 713 (quotation omitted).

Here, the advisal cited within the Westcot Declaration is clearly insufficient. Westcot Decl., Exs. A–B. The only mention of the Privacy Policy and Terms of Conditions is unaccompanied by any command on how to accept those policies. *Id.* Rather, it simply states "I also agree to the Privacy Policy and Terms and Conditions." *Id.* Crucially, patients are not required to check this box to book their appointment. *Id.* Nor does Defendant produce any evidence that Plaintiff did, in fact, check this box when scheduling her appointment. As such, this is precisely the type of unenforceable advisals contemplated by the Ninth Circuit. *See Godun*, 135 F.4th at 712–13 ("Like the faulty advisals in *Berman* and *Chabolla*, it instead simply said 'I agree' without explaining more."). Even considering the alternate advisals put forth by Defendant, a reasonable user would not expect a secondary advisal that is located after the "Claim This Offer Now" button. *See* MTD at 3. The footer beneath the button interrupts the natural flow of navigating the webpage; by not checking the box a user would have no reason to then expect that clicking the "Claim This Offer Now" button would still bind them to Defendant's policies. But crucially, Defendant has not carried its burden of proving consent. Defendant does not put forth any evidence that demonstrates which advisal Plaintiff interacted with. *See Brown*, 525 F. Supp. 3d at 1063 ("As the party seeking the benefit of the exception, it is Google's burden to prove consent.").

Defendant's cited authorities do not save it. At the outset, Defendant does not cite to any instance where a checkbox could be ignored. In each instance, a user had to check a box manifesting assent to proceed with their purchase or service. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) ("[Users] were required to take an affirmative step—clicking the 'Place Order' button—to acknowledge that they were agreeing to the terms of the privacy policy."); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) ("Pezen and Patel had to click a box separately affirming that they had read and agreed to the Terms of Use."); *Lee v. Ticketmaster L.L.C.*, 817 Fed. App'x 393, 395 (9th Cir. 2020) ("Ticketmaster's website required users to affirmatively acknowledge the agreement before proceeding") (quotations omitted). And *Smith v. Facebook, Inc.* is even less persuasive. In that case, it was conceded by plaintiffs that "the Facebook policies, including the Data Policy and the

Cookie Policy, constitute a valid contract." 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017) (quotations omitted).

**B. Counts I–IV Do Not Fail Because Plaintiff Did Not Provide Consent**

Defendant simply restates the same argument. According to Defendant, Plaintiff's claims fail because "it was impossible for Plaintiff to proceed with booking her appointment . . . without checking the box consenting" to the Privacy Policy and Terms and Conditions. MTD at 14–15. Not so.

As explained in section II.A., *supra*, Defendant's global consent argument relies primarily on a mistaken belief. Plaintiff never—regardless of webpage or advisal variant—had to check the box before proceeding with her appointment booking. *See* Westcot Decl. ¶ 6–7. Here, Defendant also attempts to label Plaintiff's allegations as "conclusory." MTD at 15. Defendant cites to *In re Google Assistant Priv. Litig.*, where the court explicitly stated that it "need not address Defendants' additional argument" regarding consent because the cause of action had already been dismissed. 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020). Regardless, Plaintiff has more than satisfied her burden. The Complaint repeatedly states that Defendant never acquired Plaintiff's prior consent. Compl. ¶¶ 10–11, 29, 96, 153, 167. This is satisfactory at this stage of the proceedings. *See Valenzuela v. Keuring Green Mtn., Inc.*, 674 F. Supp. 3d 751, 756–57 (N.D. Cal. 2023) ("Plaintiff alleges she was not informed . . . and did not consent . . . . That is sufficient at this stage.").

**C. Defendant is Not Shielded by the Party Exemption**

Defendant states that Plaintiff's ECPA and CIPA claims must be dismissed because "Defendant was a party to the communications and is therefore exempted" from liability. MTD at 15. Wrong again.

**1. <u>CIPA Does Not Provide the Same Party Exemption as the ECPA.</u>**

Defendant contends that the party exemption analysis is the same for both the ECPA and CIPA. MTD at 16. This is not true.

Unlike the Federal Wiretap Act, CIPA is a "two-party consent" statute. *Brown*, 685 F. Supp. 3d at 937; *see also* Cal. Penal Code § 631(a) (imposing liability on those "who willfully and

without the consent of *all parties to the communication* . . .") (emphasis added). As such, the Third Parties would only be permitted to listen to Plaintiff's communications if Plaintiff consented as well. Plaintiff's allegations make clear that no such consent was ever provided. Compl. ¶¶ 10–11, 29, 96, 153, 167.

**2. The Crime-Tort Exception Applies to Plaintiff's ECPA Claim.**

Under the ECPA, 18 U.S.C. § 2511, a party to the communication is shielded from liability by the "party exemption." *See, e.g.*, *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 848. However, this exemption "has its own carve-out known as the crime-tort exception." *Id.* (quotation omitted). To invoke the exception, a "plaintiff must plead sufficient facts to support an inference that the offender intercepted the communications for the purpose of a tortious or criminal act that is *independent* of the . . . recording or interception itself." *Gaige v. Exer Holding Co.*, 2025 WL 559719, at *5 (C.D. Cal. Jan. 30, 2025) (emphasis in original) (quotations omitted). But crucially, "[i]t is irrelevant that [Defendant] allegedly disclosed the Private Information at the same time as its interception." *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025). Here, the independent harm stems from Defendant's disclosure of "Plaintiff's . . . electronic communications to Third Parties . . . while knowing or having reason to know that the information was obtained" by a violation of the ECPA. Compl. ¶ 143; *see also id.* ¶¶ 96, 100, 144. More egregiously, Defendant acted for monetary and/or marketing gain. *See id.* ¶¶ 23, 142. As such, Plaintiff sufficiently pleads that Defendant's intentional *disclosure* of the collected Private Information . . . constitutes a further impropriety independent . . . from [its] interception." *R.S.*, 2025 WL 103488, at *5 (emphasis in original). Multiple federal courts, including those within the Ninth Circuit, have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Meta Pixel I*, 647 F.Supp.3d at 797 ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill

prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws"); *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception…[and that the complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception).

Defendant states, without any authority, that allegations of tortious "invasion of privacy" cannot suffice to satisfy the crime-tort exception. MTD at 17. Courts have held to the contrary. *See R.C.*, F. Supp. 3d at 901–02 (finding tortious invasion of privacy as a separate and independent tort under the ECPA); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (holding that allegations of tortious invasion of privacy were "analogous to the purpose of engaging in a HIPAA violation").

### D. Plaintiff States a Claim Under Section 632 of CIPA

Defendant argues that Plaintiff's communications were not confidential, in part, because Internet communications are presumed to not be confidential. MTD at 17. Not so.

As an initial matter, there is no presumption that internet-based communications are not confidential. *Brown*, 685 F. Supp. 3d at 938 ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (same). Instead, a communication is confidential under § 632 so long as a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P.3d 575, 582 (Cal. 2002). The proper inquiry "is whether 'any party to the communication desires for it to be confined to the parties thereto.'" *Brown*, 685 F. Supp. 3d at 938 (citing Cal. Penal Code § 632(c)).

Plaintiff clearly alleges that she reasonably expected her communications regarding her medical appointment would remain confidential. *See* Compl. ¶¶ 3, 163–64, 174. Additionally, courts have routinely recognized communications as being "confidential" when shown to be

sensitive under applicable laws, regulations, or industry norms. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (finding communications containing health information to be confidential); *Smith*, 735 F. Supp. 3d at 1199–200 (holding sensitive financial information submitted on a tax preparation website to be confidential). Nowhere is this more apparent than in the context of medical information. *See Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform . . . seeking treatment for specific conditions . . . constitute confidential communications.") (collecting cases). Here, the information disclosed was medical in nature. *See* Compl. ¶¶ 25, 102, 142, 175–76. This is exactly the type of "unique" communications which demonstrates "confidentiality." MTD at 17. And even if the Court were to impose a "presumption" that online communications are not confidential under § 632, Plaintiff would still overcome it. *See L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *18 (N.D. Cal. Oct. 10, 2025) ("[C]ommunications made in the context of a patient-medical provider relationship are readily distinguishable from online communications in general.") (quotation omitted). Defendant even concedes this point. MTD at 18 (citing *In re Meta*, 647 F. Supp. 3d at 799).

Defendant argues that it made no representation to keep Plaintiff's communications confidential, but Defendant forgets that its failure to obtain Plaintiff's consent only reinforced her reasonable belief that it would do so. *See Rusow*, 2025 WL 4657637, at *13 (online users possess a "reasonable expectation of privacy over their medical information").

### E. Plaintiff States a Claim for Invasion of Privacy Under the California Constitution

Defendant contends Plaintiff did not sufficiently allege an invasion of privacy claim under the California Constitution because (1) she "consented to the use of pixels and analytics tools" and (2) she does not allege a reasonable expectation of privacy or that any alleged intrusion was "highly offensive." MTD at 18. Defendant's arguments lack merit.

As stated *supra*, Defendant never obtained consent from Plaintiff. Its faulty advisal fails on its face as a matter of law. Therefore, the only remaining issue is whether Plaintiff has satisfied the elements of her claim.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. As a matter of law, Plaintiff possessed a reasonable expectation of privacy in her health information. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) ("It is well-settled under California law that, although not absolute, people have a privacy interest in their medical history and information.") (quotations omitted); *see also R.C.*, 733 F. Supp. 3d at 889 (finding that PII paired with "private health information . . . creates a legally protected privacy interest."); *Rusow*, 2025 WL 4657637, at *13 (finding "a legally recognizable privacy interest").

As to offensiveness, courts are hesitant to resolve "[w]hether an alleged intrusion is highly offensive" at the motion to dismiss stage. *See Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023); *see also Roe v. Amgen Inc.*, 2024 WL 2873482, at *4 (C.D. Cal. June 5, 2024) (finding a factual dispute as to offensiveness); *Rusow*, 2025 WL 4657637, at *14 (same).

Defendant makes light of Plaintiff's allegations. Defendant once again attempts to depict the disclosed information as nothing beyond Plaintiff's "name, telephone number, and email address." MTD at 19. This ignores that Plaintiff "booked an appointment for chiropractic care on Defendant's Website." Compl. ¶ 10. Therefore, the true harm inflicted by Defendant is its revelation to outside entities that Plaintiff is both a patient of the Joint and that she sought chiropractic treatment. *Id.* ¶ 105 ("Thus, Third Parties are readily able to identify the exact patient who seeks chiropractic care, and where they seek it."). As a medical provider, Defendant's actions flout accepted social norms. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) ("Courts have refused to dismiss invasion of privacy claims . . . where, as here, a data breach involved medical information").

*Hernandez v. Hillsides, Inc.* does not compel a different result. 211 P.3d 1063, 1080 (Cal. 2009). In that case, it was held that basic surveillance measures by a business was not in and of itself highly offensive when a rogue actor abused that system. *Id.* The Court faulted plaintiffs for not alleging facts refuting "any reasonable justification or beneficial motivation" for implementing an acceptable security apparatus. *Id.* Here, there is no reasonable justification or beneficial

motivation for surreptitiously disclosing patient information. The only "beneficial motivation" that exists is to enrich Defendant. *See* Compl. ¶¶ 23, 64, 69, 92, 142. Such pursuits should not shield Defendant.

**F. Plaintiff Should Be Given Leave to Amend In the Case of Dismissal**

Defendant argues that Plaintiff's claims should be dismissed with prejudice on the basis that amendment would be futile. *See* MTD at 20–21. But Defendant has not demonstrated that this is the case.

Under Fed. R. Civ. P. 15(a), "there exists a *presumption* . . . in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). This is particularly true when "Plaintiff has not previously amended its complaint." *Proassurance Specialty Ins. Co. v. Ansari*, 2026 WL 472634, at *2 (E.D. Cal. Feb. 18, 2026). "A court may deny leave to amend if the proposed amendment is futile . . . . An amendment is futile if the complaint clearly could not be saved by any amendment." *Smallwood v. Dep't of Veterans Affairs*, 2026 WL 472986, at *3 (E.D. Cal. Feb. 19, 2026). Yet, "denial of leave to amend on futility grounds is rare." *Id.* (quotations omitted).

Here, Defendant contends that "[t]here is no set of facts Plaintiff could plausibly allege to overcome the fact that she affirmatively consented" to Defendant's Privacy Policy. MTD at 21. However, Defendant's basis for this contention is flawed. Defendant confidently declares that a "visit cannot be booked, unless the new patient affirmatively agrees to Defendant's Privacy Policy and Terms and Conditions by checking a box." *Id.* at 3. Plaintiff's investigation has revealed this assertion to be false. *See* Westcot Decl. ¶ 6. At this stage of the proceedings, "the court assumes that [Plaintiff's] allegations are true and draws all reasonable inferences in the plaintiff's favor." *Motorola Mobility LLC*, 2025 WL 1939957, at *2. At best, Defendant presents nothing more than a factual dispute.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss.[3] Should the Court grant any part of Defendant's motion to dismiss, Plaintiff respectfully requests that she be granted leave to file an amended complaint.

Dated: April 13, 2026

By: /s/ *Sarah N. Westcot*

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

[3] Plaintiff withdraws her request for punitive damages.