Douglas A. Pettit, Esq. SBN 160371
Heather A. Rogers, Esq., SBN 316795
Dominic A. Velloze, Esq., SBN 360318
**PETTIT KOHN INGRASSIA LUTZ & DOLIN PC**
11622 El Camino Real, Suite 300
San Diego, California 92130
Telephone: (858) 755-8500
Facsimile: (858) 755-8504
E-mail: dpettit@pettitkohn.com
hrogers@pettitkohn.com
dvelloze@pettitkohn.com
Attorneys for Defendant
**THE JOINT CORP.**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA – FRESNO**

GISELA GONZALEZ MERICAL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE JOINT CORP.,

Defendant.

CASE NO.: 1:26-cv-00974-KES-SAB

CLASS ACTION COMPLAINT

**DEFENDANT THE JOINT CORP.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

**DATE: June 8, 2026**
**TIME: 1:30 p.m.**

Courtroom: Room 6, 7th floor
District Judge: Hon. Kirk E. Sherriff
Magistrate Judge: Hon. Stanley A. Boone
Complaint Filed: February 04, 2026
Trial Date: Not set

///

///

///

///

///

# I. INTRODUCTION

Plaintiff Gisela Gonzalez Merical's ("Plaintiff") Opposition fails to address the core deficiencies pled in her Complaint, all of which require dismissal. First and foremost, like in her Complaint, Plaintiff's Opposition does not point to a single factual instance of *her* protected health information ("PHI") or personally identifiable information ("PII") that was actually disclosed by her, let alone collected or disseminated by Defendant. As confirmed by the authorities that Plaintiff herself cites in her Opposition, "to survive a motion to dismiss, a plaintiff must identify the 'specific personal information that she disclosed that implicates a protectable privacy interest … Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information." *Mikulsky v. Noom, Inc.,* 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (quoting *Byars v. Sterling Jewelers, Inc*., No. 5:22-cv-01456-SB-SP, 2023 LX 195380 (C.D. Cal. Apr. 5, 2023) wherein the Court granted defendant's motion to dismiss for lack of subject matter jurisdiction as Plaintiff had failed to allege a concrete privacy harm).

Instead of specifying any information in which she has a protectible privacy interest, Plaintiff's Opposition merely reiterates the factually base conclusion that Defendant disclosed her PII and PHI, without ever alleging what specific information constitutes Plaintiff's PII and PHI. Plaintiff fails to allege any pages she visited on Defendant The Joint Corp.'s ("Defendant") website, any information disclosed by her when booking her appointment on Defendant's website other than her basic identifying information (name, phone number, and email address) and her clinic of choice, what specific data about her was transmitted to any third party, whether any third party actually received or used her information, or whether she experienced any downstream harm such as targeted advertising or unauthorized disclosure of health information.

///

Second, Plaintiff quibbles with the form and substance of Defendant's website's Privacy Policy and Terms and Conditions. At the heart of her argument, Plaintiff argues that she was never required to agree to Defendant's website's Terms and Conditions and Privacy Policy when booking her appointment. In support, Plaintiff's Opposition attempts to mislead the Court by seeking judicial notice of Plaintiff's Exhibit B, an irrelevant and outdated screenshot of a webpage that is entirely different from the webpage cited in Plaintiff's Complaint.[1] In contrast, Exhibit A to Defendant's Motion to Dismiss depicts the exact webpage cited in Plaintiff's Complaint (Plaintiff's Complaint, ("Compl.") p. 8, *Figure 2*) from Defendant's website *as it existed on the day that Plaintiff alleges she visited Defendant's website.* Defendant's Exhibit A, the actual webpage at issue, establishes that in order for Plaintiff to have booked an appointment as she alleges in her Complaint, she would have been required to first click a box agreeing to Defendant's website's Privacy Policy and Terms and Conditions.

Ironically, even if the Court were to accept Plaintiff's argument that she never checked the box agreeing to Defendant's website's Privacy Policy and Terms and Conditions, the Court would still be required to dismiss Plaintiff's Complaint, as it logically follows that Plaintiff would never have inputted any information whatsoever into Defendant's website, further confirming her lack of standing to bring any claim. Both positions require dismissal of Plaintiff's Complaint in its entirety.

///

---

[1] Plaintiff's Complaint contains a screenshot of a webpage from Defendant's website that is entirely different from the webpage of which she now requests the Court take judicial notice, Plaintiff's Exhibit B. In addition to being an entirely different webpage, Plaintiff's Exhibit B is from an irrelevant time period (January 21, 2025) when she alleges in her Complaint that she booked an appointment on Defendant's website on May 6, 2025.

Furthermore, as discussed in Defendant's Motion to Dismiss, Plaintiff's Complaint crops the webpage at issue to cut out the box wherein users check their agreement Defendant's website's Privacy Policy and Terms and Conditions (both hyperlinked under the box). (See, Exhibit A to Defendant's Motion to Dismiss and Compl. p. 8, Figure 2). Exhibit A to Defendant's Motion to Dismiss contains a printout of the webpage at issue in Plaintiff's Compliant in its entirety as it existed on May 6, 2025.

Finally, Plaintiff points to no *factual* allegations to support any of her causes of action. Instead, Plaintiff relies upon unpled allegations and inapplicable authorities to support her four causes of action.[2] Plaintiff's Complaint, therefore, should be dismissed without leave to amend.

## II. ARGUMENT

### A. Plaintiff Fails to Cite Any Facts to Establish Article III Standing.

There are no specific allegations in Plaintiff's Complaint alleging what *specific* data about *her* was captured or transmitted to any third party, what pages *she* actually viewed on Defendant's website, whether any third party actually received or used *her* information, or whether *she* experienced any downstream harm such as targeted advertising or unauthorized disclosure of health information.

Plaintiff's single allegation actually pertaining to Plaintiff herself is found in Paragraph 10 of her Complaint, which alleges, in relevant part, as follows:

> Plaintiff booked an appointment for chiropractic care on Defendant's Website on or around May 6, 2025. When signing up to obtain chiropractic care through the Website, Plaintiff provided Defendant with her full legal name, phone number, email address, clinic of choice, and other information related to her appointment booking….
> Compl. ¶ 10.

Plaintiff's Complaint follows this allegation with a cropped screenshot of the webpage on Defendant's website on which she alleges she booked an appointment. Compl. p. 8, *Figure 2*. Outside of alleging that she provided her basic contact information on this webpage, Plaintiff's Complaint does not detail, and her Opposition does not point to, any specific factual allegation of "other information"

---

[2] Twice in her Opposition, Plaintiff cites to *Crano v. Sojern, Inc*., 2025 WL 2689267, at *6 (N.D. Cal. Sept. 19, 2025) stating that the court in that case denied a motion to dismiss for lack of Article III standing in case where hotel booking information was allegedly disclosed. (Opp'n. pp. 4 and 5.) what Plaintiff fails to clarify is that the court granted the defendant's motion to dismiss for Plaintiff's failure to state a claim for violation of CIPA, the Federal Wiretap Act, UCL and Unjust Enrichment. The court's reasoning in granting defendant's motion to dismiss for failure to state a claim in *Crano* further supports the arguments raised in Defendant's Motion to Dismiss.

constituting private information (PII or PHI) in which Plaintiff may have a cognizable privacy interest.

Again, Plaintiff's cited authorities confirm that simply alleging "personal information," is at issue without specifying what that information is, is insufficient to confer Article III standing. *Mikulsky,* 683 F.Supp.3d at 865. "Without more, the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest. Accordingly, Plaintiff's allegation is insufficient to allege a concrete harm that is required for Article III standing." *Id*. at 864.

To the extent Plaintiff argues that inputting her basic contact information or clinic of choice on a healthcare related website is sufficient to confer standing, this too fails. Once again, Plaintiff's own cited authorities establish that specific factual allegations are required to confer standing. *Doe v. Tenet Healthcare Corp.*, 789 F.Supp.3d 814, 832 (E.D. Cal 2025) (finding Article III standing when plaintiffs alleged specific facts demonstrating personal medical history, such as "wound care and foot ulcer issues," "inflammation issues" and searches for treating physicians, and "the name of the specific medical conditions" actually entered into the website by the plaintiffs). Here, Plaintiff's allegations that Defendant captured her basic contact information and choice of clinic, without any allegations relating to specific information of any medical conditions or type of treatment sought, falls far short of information in which Plaintiff had a cognizable privacy interest sufficient to confer standing.

Finally, in her Opposition, Plaintiff argues that in her Complaint she "makes clear that Defendant revealed *her* patient status in a medical context," which, in and of itself, confers standing. In support, Plaintiff cites Paragraphs 3, 4, 12, 25, 50, 108, 174-174 of her Complaint. Incredibly, not one of these cited paragraphs contains a single allegation as to Plaintiff herself. Accordingly, these paragraphs fail to allege

that *Plaintiff's* PHI or PII was ever actually transmitted, received, or used by any third party.[3]

**B. Plaintiff Consented to Defendant's Data Practices.**

**1. Plaintiff Relies Upon an Outdated and Irrelevant Screenshot of a Webpage that is Immaterial to Her Allegations.**

In her Opposition, Plaintiff argues (i) that users of Defendant's website are not required to check a box indicating that they agree to the terms of Defendant's use of pixels and analytics tools on its website, and (ii) that no evidence exists that Plaintiff checked the box. Opp'n p. 12; Declaration of Sarah N. Wescot ¶ 6.

As an initial matter, Plaintiff's argument is premised upon an outdated and irrelevant screenshot of a webpage that is immaterial to the allegations in her complaint. This is Plaintiff's second clear attempt to mislead the Court.[4] Exhibit B to Plaintiff's Opposition is a screenshot of an entirely different and outdated webpage that existed on Defendant's website months prior to Plaintiff's visit and is different than the webpage at issue in Plaintiff's Complaint. *See* Opp'n. Exhibit B and Compl. p. 8, *Figure 2*. Furthermore, Plaintiff's Exhibit B is from January 21, 2025, when

[3] To be considered PHI, information must be "individually identifiable health information." 45 C.F.R. § 160.103. Individually identifiable health information is that which is (1) created or received by a health care provider, (2) relates to the past, present, or future physical or mental health condition of an individual, the provision of healthcare to an individual, or payment for the provision of health care, and (3) either identifies the individual or there is a reasonable basis to believe the information can be used to identify the individual. No allegations in Plaintiff's Complaint specify what "other information" was disclosed to bring it within the realm of PHI.

[4] Like in her Complaint, Plaintiff once again attempts to deceive the Court in her Opposition. Plaintiff's Complaint includes a screenshot of the $29 Initial Visit Promotion webpage from Defendant's website but blatantly crops from the screenshot the box containing hyperlinks to Defendant's Privacy Policy and Terms and Conditions which patients are require to check before they are able to book their first appointment. (See Exhibit A to Defendant's Motion to Dismiss.) It is clear that Plaintiff's Complaint attempts to hide this box from the Court in an effort to circumvent the fact that she was required to explicitly agree Defendant's Privacy Policy and Terms and Conditions by checking a box in order to book an appointment on May 6, 2025 as she alleges in her Complaint. In her Opposition to Defendant's Motion to Dismiss, Plaintiff cherry picks an entirely different and unrelated webpage from Defendant's website from January 21, 2025 that is irrelevant to the allegations in her Complaint. See, Exhibit A to Plaintiff's Opposition and Compl. p. 8, *Figure 2*.

Plaintiff's Complaint is clear that she accessed Defendant's website on May 6, 2025. Declaration of Sarah N. Wescot, ¶ 4; *see also* Compl. ¶ 10. Accordingly, this Court should rely upon Exhibit A to Defendant's Motion to Dismiss, which depicts the webpage at issue as it appeared on May 6, 2025, the same day Plaintiff accessed Defendant's Website. Declaration of Tyson Clyne, ("Clyne Decl.") ¶ 6.

Exhibit A to Defendant's Motion to Dismiss clearly depicts that Before claiming the $29 New Patient Special the new patient is first required to click a checkbox agreeing to receive marketing and promotional text messages under which it states that "I also agree to the Privacy Policy and Terms and Conditions." Clyne Decl. ¶ 7. The Privacy Policy and the Terms and Conditions are in blue and hyperlinked under the checkbox. *Id.* Defendant's Exhibit A further confirms the requirement to click a checkbox indicating that the user "also agree[s] to the Privacy Policy and terms and Conditions" **before** being permitted to book a chiropractic appointment as Plaintiff alleges in her Complaint. Clyne Decl. ¶ 6. Plaintiff's reliance on an outdated and irrelevant screenshot of a webpage on Defendant's website that existed prior to the relevant time period and is not at issue in her Complaint is without merit and must be disregarded.

Next, Plaintiff confusingly makes an argument in her Opposition that no evidence exists that she checked the box agreeing to Defendant's website's Privacy Policy and Terms and Conditions when booking her appointment. However, Plaintiff's own allegation in her Complaint that she "booked an appointment for chiropractic care" contradicts this confounding argument. Compl. ¶ 10; *see also* Clyne Decl., ¶ 7. As booking an appointment first required Plaintiff to check a box stating that she agreed to Defendant's website's Privacy Policy and Terms and Conditions, her own Complaint evidences that she in fact checked the box. If Plaintiff is now making the opposite allegation to what is plead in her Complaint, that she *did not* book an appointment on Defendant's website, then such a representation also defeats her entire Complaint, as she would then have never shared any of the

information she claims is at issue through Defendant's website whatsoever. *See* Clyne Decl. ¶ 7; Compl. ¶ 26-27. Plaintiff cannot overcome the deficiencies in her Complaint by manipulating what she plead in her Complaint to now prove an impossibility. The fact remains that Plaintiff necessarily had to agree to Defendant's website's Privacy Policy and Terms and Conditions in order to "book[] an appointment for chiropractic care" as she alleges in her Complaint. Compl. ¶10.

Notwithstanding the fact that Plaintiff entirely fails to allege any specific PII or PHI shared with or transmitted by Defendant, either Plaintiff checked the box and agreed to Defendant's website's Privacy Policy and Terms and Conditions in order to book an appointment, or she never booked an appointment and therefore never imputed any information into Defendant's website whatsoever. Both scenarios require dismissal of Plaintiff's Complaint.

**2. Courts Routinely Enforce Agreements like the Agreement Found On Defendant's Website.**

As discussed above, Exhibit A to Defendant's Motion to Dismiss clearly demonstrates that Plaintiff agreed to Defendant's website's Privacy Policy and Terms and Conditions when booking an appointment on May 6, 2025. The question then becomes whether such an agreement is enforceable. Plaintiff's Opposition attempts to mischaracterize the type of agreement contained within Defendant's website to which Plaintiff agreed.

Exhibit A to Defendant's Motion to Dismiss, containing the relevant webpage through which Plaintiff alleges in her Complaint that she booked an appointment on May 6, 2025, makes clear that Plaintiff agreed to the Terms and Conditions and Privacy Policy utilizing a "sign-in wrap" agreement. A sign-in wrap agreement exists when a user is required to click a box or a button indicating agreement to terms of service in order to proceed, but where the terms of service are not explicitly shown unless the user clicks a link. *Topolewski v. Experian Data Corp.*, 736 F.Supp.3d 818, 824 (C.D. Cal. 2024). Sign-in wrap agreements may be enforceable "if '(1) the

website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Id.* (finding a sign-in wrap agreement enforceable when plaintiff was provided with prominent notice that was agreement to the terms of service, the terms were available if he wished to review, and he was required to take affirmative action by clicking "submit secure order" button to proceed.)

Just as in *Topolewski*, Defendant's Exhibits A clearly demonstrates that Plaintiff was provided clear and conspicuous notice that "By checking this box, I agree … to the Privacy Policy and Terms and Conditions." Clyne Decl. ¶ 6. The Privacy Policy and the Terms and Conditions appear in blue and hyperlinked two different times under the check box. Clyne Decl. ¶ 7. Furthermore, the check box stands alone, separate from the "Claim Your Offer Now" banner which does not function until a user checks the box. In this case, Plaintiff's affirmative action to click on the check box in order proceed with booking an appointment is an unambiguous manifestation to agree to Defendant's website's Privacy Policy and the Terms and Conditions.

Ultimately, there is simply no question that Plaintiff was (1) conspicuously presented with the Terms and Conditions and Privacy Policy, (2) was required to check the click box in order to be able to proceed with booking her appointment, and (3) affirmatively consented to the Privacy Policy and Terms and Conditions. Therefore, based on Plaintiff's agreement to Defendant's website's Privacy Policy and Terms and Conditions, all of Plaintiff's claims are barred as a matter of law and Plaintiff's Complaint should be dismissed without leave to amend.

///

///

///

///

### C. Plaintiff Fails to State a Claim for All Causes of Action.

#### 1. The Party-Crime Exception Does Not Apply and Counts I and II Must Be Dismissed.

In her Opposition, Plaintiff cites to numerous cases that a violation of HIPAA necessitates the application of the party-crime exception. *See* Opp'n, p. 14. However, Plaintiff's cited authorities are distinguishable, as they rely upon violations of HIPAA to find application of the party-crime exception and no such violation is relevant in this case. See, e.g., *R.S. v. Prime Healthcare Servs.*, Case No. 24-cv-00330, 2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025). Plaintiff has not pled any violation of HIPAA in her operative Complaint. Long standing precedent is clear that unpled theories of liability cannot be raised in an opposition to a motion to dismiss. *Provencio v. Vazquez*, 258 F.R.D. 626, 639 (E.D. Cal. 2009). It is also well established that when a plaintiff attempts to use an exception to defeat a motion to dismiss, the facts supporting the exception must be alleged and pled in the operative complaint. *United States v. Korner*, 56 F.Supp. 242, 248 (S.D. Cal. 1944). Therefore, this Court must disregard any attempt by Plaintiff to newly assert in her Opposition that Defendant violated HIPAA as the basis for Plaintiff's attempt to apply the party-crime exception.

To the extent that Plaintiff argues that because "Defendant acted for monetary and/or marketing gain," the party-crime exception applies, courts within the Ninth Circuit have held that purely economic gain is not sufficient to apply the party-crime exception. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F.Supp.3d 1047, 1058 (N.D. Cal. 2025); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778 (N.D. Cal. 2022).

In short, Plaintiff fails to plead any factual allegations in her Complaint to support the application of the party-crime exception to Counts I and II. Both counts must therefore be dismissed in their entirety.

///

///

**2. Plaintiff Fails to Address Any Allegation to Support a Violation of CIPA § 632, Necessitating Dismissal of Count III.**

Plaintiff fails to state a claim under Section 632(a) because she does not adequately allege (i) that the communications were confidential or (ii) that Plaintiff had any reasonable expectation in privacy. As established above and in Defendant's Motion to Dismiss, Plaintiff affirmatively agreed to Defendant's website's Privacy Policy and Terms and Conditions and therefore to Defendant's use of the pixels and analytics products, as contained in Defendant's disclosures. Clyne Decl. ¶ 9. This, alone, necessarily defeats Plaintiff's CIPA § 632 claim.

Plaintiff's agreement to Defendant's website's Privacy Policy and Terms and Conditions aside, Plaintiff's Complaint alleges **only** that she entered her name, phone number, email address, and clinic of choice into Defendant's website. Plaintiff attempts to characterize this information as "medical in nature" simply because it was entered into a website for a chiropractic company. Plaintiff provides no support for this incredulous assertion. Once again, the cited authorities in Plaintiff's Opposition delineate what constitutes confidential medical communications. *See Doe v. GoodRx Holdings, Inc.*, Case No. 23-cv-00501, 2025 U.S. Dist. LEXIS 140287 (N.D. Cal., July 22, 2025) ("Plaintiffs interactions with the GoodRx platform – by seeking discounts on *specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms* – constitute confidential communications) (emphasis added); *Doe v. Tenet Healthcare Corp.*, 789 F.Supp.3d 814, 832 (E.D. Cal 2025).

California courts have long held "a presumption that Internet communications do not reasonable give rise to [a privacy] expectation." *Brown v. Google LLC*, 685 F.Supp.3d 909, fn. 35 (N.D. Cal 2023), quoting *Revitch v. New Moosjaw, LLC*, Case No. 18-cv-06827, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal., Oct. 23, 2019). To overcome this presumption, "plaintiffs must plead unique, definite circumstances rebutting California's presumption against online confidentiality." *Id.*, quoting *Rodriguez v. Google, LLC*, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal, May 21, 2021).

Plaintiff fails to plead any facts demonstrating unique and definite circumstances of a reasonable expectation of privacy in disclosure of basic contact information. Having failed to do so, Plaintiff's Count III fails and must be dismissed.

**3. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion.**

Plaintiff's self-characterized voluntary disclosure of information onto Defendant's website is not an intrusion into a place where Plaintiff had a reasonable expectation of privacy. Plaintiff's Opposition attempts to obfuscate that fact by focusing on the "highly offensive" element of her claim for intrusion upon seclusion. However, Plaintiff must establish that the intrusion was highly offensive *and* Defendant's intentionally intruded into a place where Plaintiff had a reasonable expectation of privacy. *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2002). Plaintiff has failed utterly to do so here.

Setting aside that Plaintiff fails to demonstrate any reasonable expectation of privacy regarding the information she claims she shared on Defendant's website (as discussed in detail above), and ignoring fact that Plaintiff voluntarily entered said information into Defendant's website (*See* Compl. ¶ 10), Plaintiff wholly fails to address the critical lack of any factual allegation that Defendant intruded into a private place. Plaintiff cannot possibly make such an allegation when Plaintiff chose to visit Defendant's website and voluntarily entered her information therein. This is simply not an intrusion into a private area. *See, e.g.,* Rest. (2d) of Torts § 652B, Illustration 1. As such, Plaintiff's Count IV fails as a matter of law.

**D. Plaintiff's Claim for Punitive Damages Fails Along with All Other Claims.**

Plaintiff does not address Defendant's argument that they are not entitled to punitive damages and that her claim must be stricken from the Complaint. Mot. to Dismiss, § IV(C). Plaintiff, therefore, concedes Defendant's argument and has abandoned her claim for punitive damages. *Yee v. Select Portfolio, Inc.,* No. 18-CV-02704-LHK, 2018 U.S. Dist. LEXIS 200794, *20 (N.D. Cal. Nov. 26, 2018)

(construing plaintiff's failure to oppose arguments as abandonment of the claim and in favor of dismissing the claim.).

**E. Leave to Amend would be Futile**

Plaintiff requests leave to amend because her "investigation" demonstrates that she was not required to affirmatively consent to Defendant's website's Privacy Policy and Terms and Conditions before booking a chiropractic appointment. Opp'n, p.18. However, once again, Plaintiff's entire basis for seeking leave to amend is premised upon her Exhibit A, which, as outlined at length above, is neither relevant nor applicable to any time period alleged and relevant to her Complaint. Compl. ¶ 10.

As all relevant and applicable Exhibits affirmatively conclude that Plaintiff was notified of and affirmatively consented to the use of the pixels and analytics, there is simply no set of facts Plaintiff could plausibly allege to overcome the fact that she affirmatively consented to this use. Therefore, granting leave to amend would be futile.

## III. CONCLUSION

For the foregoing reasons, Defendant, The Joint Corp., respectfully requests that this Honorable Court grant its Motion to Dismiss for lack of standing required to establish this Court's subject matter jurisdiction and because Plaintiff failed to state any claim upon which relief can be granted.

**PETTIT KOHN INGRASSIA LUTZ & DOLIN PC**

Dated: April 23, 2026

By: *s/ Dominic A. Velloze*
Douglas A. Pettit, Esq.
Heather A. Rogers, Esq.
Dominic A. Velloze, Esq.
Attorneys for Defendant
**THE JOINT CORP.**
dpettit@pettitkohn.com
hrogers@pettitkohn.com
dvelloze@pettitkohn.com

# CERTIFICATE OF SERVICE

I hereby certify that the following document(s):

**DEFENDANT THE JOINT CORP.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

was/were served on this date to counsel of record:

[x] **BY ELECTRONIC TRANSMISSION:** I electronically filed the above document(s) with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send notification of this filing to the person(s) listed below.

Sarah N. Westcot, Esq.
**BURSOR & FISHER, P.A.**
701 Brickell Avenue, Suite 2100
Miami, Florida 33131
Tel: (305) 330-5512
Fax: (305) 679-9006
Email: swestcot@bursor.com
Assistant Diego A. Rivera drivera@bursor.com
**Attorneys for Plaintiff**
**GISELA GONZALEZ MERICAL et al**

Executed on **April 23, 2026,** at San Diego, California.

*s/ Alyssa Gunn*
Alyssa Gunn