# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GISELA GONZALEZ MERICAL, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>THE JOINT CORP.,<br><br>Defendant. | Case No. 1:26-cv-00974-KES-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(ECF No. 8)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is the motion to dismiss for failure to state a claim filed by Defendant The Joint Corp. The Court held a hearing on July 8, 2026. Stephen Beck, Esq., appeared on behalf of Plaintiff. Heather Rogers, Esq., appeared on behalf of Defendant. Having considered the moving papers and arguments by counsel, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendant's motion.

**I.**

**BACKGROUND**

Plaintiff is Gisela Gonzalez Merical ("Plaintiff"), a citizen of California and is domiciled in Fresno. (ECF No. 1, ¶ 9.) Defendant is The Joint Corp. ("Defendant"), a business incorporated in the State of Delaware and has its principal place of business in Scottsdale, Arizona. (Id. at ¶ 13.)

Notwithstanding in-depth factual background in the complaint regarding California and

Federal law, as well as internet tracking technologies, the essential facts in this case are straightforward. On or about May 6, 2025, Plaintiff alleges she accessed Defendant's Website in order to book an appointment for chiropractic care. (Id. at ¶ 10.) "When signing up to obtain chiropractic care through the Website, Plaintiff provided Defendant with her full legal name, phone number, email address, clinic of choice, and other information related to her appointment booking." (Id. at ¶ 10.) "Plaintiff provided this sensitive information with the understanding that it would remain confidential between her and Defendant." (Id.) According to Plaintiff, at no time did "Defendant obtain Plaintiff's prior consent to intercepting and disclosing her communications to outside Third Parties." (Id.)

Plaintiff alleges that when she accessed the Website, "Plaintiff's communications were intercepted in transit by the Third Parties – as enabled by Defendant – including communications that contained Plaintiff's personally identifiable information and sensitive appointment details." (Id. at ¶ 11.) "Neither Defendant nor the Third Parties procured Plaintiff's prior consent to intercepting and disclosing these communications." (Id.) Plaintiff purports that by failing to receive the requisite consent, "Defendant breached its duties of confidentiality and unlawfully disclosed Plaintiff's personally identifiable information ("PII") and protected health information ("PHI")." (Id. at ¶ 12.)

More specifically, Plaintiff alleges that "[w]hen users access the Website, Defendant discloses the URLs of every page they visit, including during the booking process. For example, if a Website visitor clicks on 'Symptoms and Disorders' and selects the particular ailment (*i.e.* shoulder pain) they hope to treat, such information is disclosed." (Id. at ¶ 104.) This is so because "[u]nbeknownst to users, Defendant knowingly integrated the Google Analytics cookie and DoubleClick API, the TradeDesk's Adsrvr Pixel, the TikTok Pixel, and the Microsoft Bing Ads Tracker (collectively, the 'Tracking Technologies') onto the Website to assist with its marketing efforts." (Id. at ¶ 23.) Thereafter, "Defendant systematically discloses . . . sensitive and confidential appointment booking details, including their PHI and PII [and information related to their medical chiropractic appointments], to Third Parties." (Id. at ¶¶ 28, 142.) Plaintiff alleges that "[t]he disclosed information also includes the precise clinic where treatment

is to take place, along with the patient's unhashed email address, phone number, and full name." (Id. at ¶ 105.) Thus, "Third Parties are readily able to identify the exact patient who seeks chiropractic care, and where they seek it." (Id.)

Though the complaint continues on to describe in more detail regarding tracking technologies and as it relates to the Website, the Court will discuss any further relevant portions of the complaint its analysis below.

On February 4, 2026, Plaintiff commenced this action. (ECF No. 1.) Plaintiff brings four causes of action: 1) violation of the Federal Wiretap Act (Electronic Communication Privacy Act); 2) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; 3) violation of the CIPA, Cal. Penal Code § 632; and 4) invasion of privacy, under the California constitution. (Id. at pp. 31-39.) On March 30, 2026, Defendant filed the instant motion to dismiss. (ECF No. 8.) The assigned District Judge referred the motion to the undersigned. (ECF No. 14.) The motion was fully briefed (ECF Nos. 10, 13), and the Court heard argument on July 8, 2026. (ECF No. 21.)

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if a plaintiff lacks Article III standing to bring suit. Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). The standing doctrine is derived from limitation of Article III on the judicial power of federal courts to hear only "actual cases or controversies." Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016) (internal quotation marks omitted). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. at 338. Standing "is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021). "The irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S. at 338 (cleaned up), quoting Lujan v. Defenders of Wildlife, 504

U.S. 555, 560-61 (1992). A plaintiff must show that the injury was "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks omitted).

The party invoking federal jurisdiction bears the burden of demonstrating standing. TransUnion, 594 U.S. at 430-31. A jurisdictional challenge under Rule 12(b)(1) may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial challenge "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. The "'general rule' for Rule 12(b)(1) motions challenging subject-matter jurisdiction is to take allegations 'as true unless denied or controverted by the movant.'" Federal Bureau of Investigation v. Fikre, 601 U.S. 234, 237 n.1 (2024), quoting 5C C. Wright & A. Miller, Federal Practice and Procedure § 1363, p. 107 (3d ed. 2004). A factual challenge "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. Generally, in resolving a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." Id. (citations omitted). However, the Ninth Circuit recently clarified that "when jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" Bowen v. Energizer Holdings, Inc., 118 F.4th 1134, 1143 (9th Cir. 2024), quoting Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014).

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief." Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In ruling on a Rule 12(b)(6) motion, the court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation omitted). But "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" need not be accepted. In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). "Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory." Saloojas, Inc. v. Aetna Health of Cal., Inc., 80 F.4th 1011, 1014 (9th Cir. 2023) (cleaned up).

## III.

## DISCUSSION

Broadly speaking, Defendant makes three arguments. First, Defendant argues that Plaintiff has not alleged an injury-in-fact, and therefore, Plaintiff lacks Article III standing. (ECF No. 8, pp. 7-12.) Should the Court disagree, Defendant then argues that Plaintiff fails to state a claim for a variety of reasons. (Id. at pp. 12-18.) Lastly, Defendant argues that Plaintiff's prayer for punitive damages should be dismissed. (Id. at p. 19.) Plaintiff opposes, taking Defendant's arguments in turn; however, Plaintiff concedes Defendant's argument regarding punitive damages and has affirmatively withdrawn such relief. (ECF No. 10, p. 19 n.3.) Ultimately, the Court agrees with Defendant on standing and failure to state a claim as discussed below.

/ / /

/ / /

### A. Judicial Notice[1]

Both parties have moved for judicial notice of certain documents. Defendant seeks notice of the Website's "New Patient Special" registration page, as it appeared on May 6, 2025, and as it appeared on March 30, 2026. (ECF No. 8-2, ¶ 6.) Defendant also seeks notice of its privacy policy and its terms and conditions, both effective on of May 6, 2025. (Id. at ¶¶ 9, 10.) Plaintiff moves for notice of the Website's "New Patient Special" registration page as it appeared on April 13, 2026, and as it appeared on January 21, 2025. (ECF No. 10-1, ¶¶ 3, 4.) Thereafter, Plaintiff moved for judicial notice of a copy of the appointment booking from the Website and an archived copy of the Website as it appeared in January 2025. (ECF No. 11.)

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). Doing so would convert a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, a court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Courts may also take judicial notice of undisputed matters of public record, Lee, 250 F.3d at 689, including documents filed in federal or state courts. Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012). As relevant here, "[a]s a general matter, websites and their contents may be proper subjects for judicial notice." Jones v. Tonal Systems, Inc., 751 F. Supp. 3d 1025, 1031 (S.D. Cal. 2024). This is especially true where "allegations in the complaint necessarily rely [on the documents], even if not expressly referenced in the complained, provided that the authenticity of those documents are not in dispute." Id.

Furthermore, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document

[1] The documents put forth for judicial notice bear only on Defendant's Rule 12(b)(6) arguments.

forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). "If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (cleaned up).

Essentially, all the documents relate to the appearance of the Website on certain dates, as well as the privacy policy and terms of service thereof. No party has objected to the other's request for judicial notice. The Court finds that all of the offered documents are appropriate for judicial notice and will use them appropriately.[2]

**B. Article III Standing**

Defendant argues that Plaintiff has not alleged that her PHI or PII was intercepted by third parties or that the PHI alleged was actually PHI and therefore, Plaintiff has failed to allege an injury-in-fact because she has not alleged a cognizable privacy interest. (ECF No. 8-1, pp. 7-12.) Plaintiff opposes, arguing that Defendant has misrepresented the facts, which undermines both of its positions. (ECF No. 10, pp. 4-7.) The Court agrees with Defendant.

To establish standing, a plaintiff must show "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021), citing Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560–61, (1992). A concrete injury "must actually exist;" it must be "real," and not "abstract." Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016). But "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 341. In other words, Plaintiff's allegations that Defendant violated the CIPA do not automatically create a concrete injury in the Article III context. Rather, a concrete injury may be intangible if it "has a close relationship to a harm that

---

[2] That said, the Court has reviewed Plaintiff's second request for judicial notice (ECF No. 11), and it does not appear that any documents have been attached. The Court cross-referenced the request with the request made in opposition, and it appears that the two requests seek notice of similar yet at least one distinct document. In any event, such inadvertence would not alter the Court's analysis.

has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. In determining whether alleged privacy intrusions bear such a relationship, courts mainly consider "the nature of the information at issue." In re Yahoo Mail Litig., 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014). "[I]n data breach cases, courts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all." I.C. v. Zynga, Inc., 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022). Thus, to survive a motion to dismiss, a plaintiff must identify the "specific personal information she disclosed that implicates a protectable privacy interest." See, e.g., Byars v. Sterling Jewelers, Inc., No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (dismissing a CIPA claim because the plaintiff had not identified the personal information she disclosed and therefore had not established any harm to her privacy); In re Facebook, 956 F.3d at 598-99 (discussing that a right to privacy "encompasses the individual's control of information concerning his or her person" and is violated when the defendant "reveal[s] an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives").[3]

In support of her position, Plaintiff has directed the Court to certain paragraphs from the complaint, of which the Court quotes the relevant paragraphs herein:

> Defendant has purposefully installed various tracking application programming interfaces into the code of its website to aid, employ, agree with, or otherwise enable several third parties – Google LLC ("Google"); Microsoft Corporation ("Microsoft"); The Trade Desk, Inc. ("TradeDesk"); and TikTok Inc. ("TikTok") (collectively, the "Third Parties") – to intercept patient communications as they fill out online appointment forms, including communications containing protected health information. That is unlawful.

(ECF No. 1, ¶ 4.)

> Plaintiff booked an appointment for chiropractic care on Defendant's Website on or around May 6, 2025. When signing up to obtain chiropractic care through the Website, Plaintiff provided Defendant with her full legal name, phone number, email address,

[3] In a class action, at least one named plaintiff must have standing. "Thus, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class.'" I.C. v. Zynga Inc., 600 F. Supp. 3d 1034, 1046-47 (N.D. Cal. 2022) (cleaned up), quoting O'Shea v. Littleton, 414 U.S. 488, 494, (1974).

> clinic of choice, and other information related to her appointment booking. Plaintiff provided this sensitive information with the understanding that it would remain confidential between her and Defendant. At no time did Defendant obtain Plaintiff's prior consent to intercepting and disclosing her communications to outside Third Parties.
>
> Upon accessing the Website, as alleged in greater detail below, Plaintiff's communications were intercepted in transit by the Third Parties – as enabled by Defendant – including communications that contained Plaintiff's personally identifiable information and sensitive appointment details. Neither Defendant nor the Third Parties procured Plaintiff's prior consent to intercepting and disclosing these communications.

(Id. at ¶¶ 10, 11.)

> Defendant owns and operates the Website. Unbeknownst to users, Defendant knowingly integrated the Google Analytics cookie and DoubleClick API, the TradeDesk's Adsrvr Pixel, the TikTok Pixel, and the Microsoft Bing Ads Tracker (collectively, the "Tracking Technologies") onto the Website to assist with its marketing efforts.

(Id. at ¶ 23.)

> Plaintiff had her PHI and PII intercepted by Third Parties in the same manner described when she booked an appointment on the Website.

(Id. at ¶ 30.)[4]

> Third Parties—including Google, TradeDesk, TikTok, and Microsoft—offer companies, including Defendant, snippets of code they can install in web browsers of users logged into their services. These code snippets uniquely identify the user and are sent with each intercepted communication to ensure the third party can identify the specific user associated with the information intercepted (in this case, confidential PII and appointment information).
>
> Defendant intentionally configured the Tracking Technologies installed on its Website to capture both the 'characteristics' of individual's communications with its Website (their IP addresses, User-IDs, cookie identifiers, device identifiers, emails, phone numbers) and the 'content' of these communications (the buttons, links, pages, full-length URLs, and tabs they click/view related to the services sought from Defendant).

(Id. at ¶¶ 100, 101.)

> When users access the Website, Defendant discloses the URLs of

[4] Plaintiff has also included citations to how the source code works to transmit information to third parties. (ECF No. 10, p. 4, citing ECF No. 1, ¶¶ 36, 50, 76, 84, 101, 104.)

> every page they visit, including during the booking process. For example, if a Website visitor clicks on 'Symptoms and Disorders' and selects the particular ailment (i.e. shoulder pain) they hope to treat, such information is disclosed. See Fig. 5 (Google disclosure).
>
> The disclosures go far beyond that, however. The disclosed information also includes the precise clinic where treatment is to take place, along with the patient's unhashed email address, phone number, and full name. Thus, Third Parties are readily able to identify the exact patient who seeks chiropractic care, and where they seek it. See Figs. 6-7 (Google disclosures); Fig. 8 (TradeDesk disclosure); Fig. 9 (TikTok disclosure); Fig. 10 (Microsoft disclosure).

(Id. at ¶¶ 104, 105.)

> This information personally identifies the Website user as a patient of [Defendant], and indicates she is seeking chiropractic care for shoulder pain. Such detailed disclosure constitutes an egregious violation for any provider of healthcare.

(Id. at ¶ 108.)

With that, Defendant begins by arguing that that Plaintiff has failed to allege that her PHI or PII was collected and disclosed by Defendant to third parties. (ECF No. 8-1, p. 8.) Defendant points to paragraph 10 as the only paragraph of substance regarding allegations that occurred to Plaintiff personally, which includes only allegations that Plaintiff provided her "legal name, phone number, email address, clinic of choice, and other information related to her appointment booking." (ECF No. 1, ¶ 10.) Defendant then argues that the alleged PHI Plaintiff disclosed was not, in fact, PHI given the allegations. (ECF No. 8-1, pp. 10-12.) Plaintiff counters, arguing that paragraph 10 also notes that "Plaintiff [was] book[ing] an appointment for chiropractic care on Defendant's Website." (Id.) In Plaintiff's view, because "Third Parties are readily able to identify the exact patient who seeks chiropractic care, and where they seek it," (Id. at ¶ 105), she has sufficiently alleged transmission of PHI and/or PII, as well as how in her view she has alleged PHI.[5] The parties then discuss precedent, which the Court must address in this highly

[5] Plaintiff also raises that her use of hypothetical users and visitors alongside corresponding screenshots and well-pleaded facts do not discount Plaintiff's claims. (ECF No. 10, p. 4), citing Hassid v. Alex and Ani, LLC, 816 F. Supp. 3d 1196, 1201 (C.D. Cal. 2026). While the Court agrees, it does not appear that Defendant explicitly argued that Plaintiff's use of hypotheticals is a separate and complete basis for dismissal. (ECF No. 8-1, pp. 8-9.) Rather, Defendant asserts that the allegations and screenshots involving hypotheticals "are not allegations specific to Plaintiff, and are not sufficient to establish standing because they do not involve Plaintiff in the slightest." (Id. at p. 9.)

fact-specific area of the law.

The Court begins with Plaintiff's caselaw. In Frasco v. Flo Health, Inc., the plaintiffs alleged that they used a sexual health and wellness smartphone application, inputting "highly personal information about menstruation, ovulation, pregnancy goals, and the like . . . " 349 F.R.D. 557, 569 (N.D. Cal. 2025). The application "coached users to input a wide variety of personal data, such as the 'timing of the user's menstrual cycle,' 'preferred birth control methods,' and details about users' 'sexual activity.'" Id. Though the motion before the court was regarding class certification, the Frasco court addressed the defendants' "sprinkled comments about plaintiffs' standing to sue in their brief." Id. at 579. The court generally dismissed most of these comments as demonstrating that the "defendants' standing arguments are inextricably intertwined with the merits for determination later in the case." Id. The only aspect that the court addressed was the defendants' discussion regarding that it later "anonymized data" it received, which the defendants argued negated the plaintiffs' "concrete" injury. Id. The court rejected this argument, finding that it was irrelevant what the third parties did to the PHI or PII following misappropriation because such anonymizing "[did] not cure or wash away the original violation." Id. "The fact that misappropriated information might be laundered in some way to hide the owner's identity is of no moment to the commission of the tort." Id.

The Court finds Frasco to be distinguishable by the fact that the plaintiffs explicitly alleged inputting highly personal health information about menstruation, ovulation, and pregnancy goals into an application. Indeed, the Frasco court addressed the defendants' seemingly haphazard standing argument only insofar as rejecting that later anonymizing such data would somehow negate a concrete injury suffered by the plaintiffs in regard to the original misappropriation of their information. Here, beyond entering generic PII, the only salient allegation is that "Plaintiff booked an appointment for chiropractic care through Defendant's Website . . . . When signing up to obtain chiropractic care through the Website, Plaintiff provided Defendant with . . . other information related to her appointment booking." (ECF No. 1, ¶ 10.) There are no details from Plaintiff regarding what 'other information related to her

appointment booking.' Thus, the Court finds Frasco is not persuasive for Plaintiff's position.

In R.C. v. Walgreen Co., on a posture of a motion to dismiss for failure to state a claim,[6] one plaintiff used the defendant's website several times to purchase sensitive healthcare products, including an over-the-counter antifungal medication to treat a yeast infection. 733 F. Supp. 3d 876, 887 (C.D. Cal. 2024). The defendant's website captured information regarding the webpages she visited, including the webpages for the search engine and the specific product she placed in her virtual shopping cart, as well as the virtual shopping cart page. Id. Another plaintiff purchased a test kit for diabetes on the defendant's website, which captured the same type of information. Id. Both plaintiffs had a Facebook account and would receive respective advertisements following the use of the defendant's website. Id. The plaintiffs also alleged that their IP addresses were captured. See id. at 889. In analyzing the plaintiffs' invasion of privacy claim, though the court agreed that the "Plaintiffs [did] not have a legally protected privacy interest in their IP addresses, . . . [the court found that the] Plaintiffs allege[d] another means though which information about their health-related purchases was rendered personally identifiable: association with their unique Facebook IDs." Id. at 889-90. Thus, the R.C. court concluded that the "alleged . . . information at issue was personally identifiable." Id. at 890. The court then found that the plaintiffs had alleged "how [the] Defendant's disclosure of their private information to Meta via the Pixel included the purchasing of sensitive healthcare products (Monistat and a diabetes test kit) related to specific health conditions (yeast infection and diabetes)." Id. at 893. The R.C. court drew a distinction between products purchased on the defendant's website for health conditions versus beauty products where "it is unlikely that a privacy claim would flow from such activity." Id. Therefore, the court concluded that the plaintiffs had stated a claim for invasion of privacy. Id. For similar and additional reasons, the R.C. court also found that the plaintiffs had stated a claim under the ECPA and CIPA. Id. at 901.

[6] The Court observes that the inquiry of whether a plaintiff has alleged an injury-in-fact and whether a plaintiff has stated a claim have a tendency to bleed into one another in this area of the law. Thus, courts are not seemingly uniform in their approach. With that observation, the Court acknowledges that the parties have brought cases for the purpose of demonstrating their positions on the issue of standing with some cases analyzing standing vis-à-vis injury-in-fact, while others analyze whether a plaintiff has alleged a privacy claim. Nonetheless, the Court takes each case for what they are worth whether analyzed under standing or failure to state a claim.

The Court finds R.C. to be partially persuasive. The Court agrees that an IP address alone does not give rise to a legally protected privacy interest. However, the allegations in R.C. included that the plaintiffs searched for and purchased over-the-counter medication/kits for specific health conditions. Though Plaintiff has alleged that Defendant's Website is to make appointments for chiropractic care, the Court is unconvinced that this—paired with generic PII and a clinic preference—is analogous to inputting searches for over-the-counter medications/kits for specific health conditions. To be sure, Plaintiff has alleged a hypothetical example of a person seeking care for shoulder pain relief via the Website, but Plaintiff has not alleged what condition she allegedly sought care for. (See ECF No. 1, ¶¶ 10, 104.) Therefore, the Court finds R.C. is unpersuasive insofar as supporting this aspect of Plaintiff's argument.

Next, in Ruscow v. Skinspirit Essentials LLC, the plaintiffs used the defendant's website to "book several medical appointments," including that "Rusow booked a consultation for Botox and laser treatment on May 12, 2023, and T.S. booked an appointment for 'Derma Filler' on December 6, 2024." No. 24-cv-09317-CRB, 2025 WL 4657637, at *2 (N.D. Cal. Oct. 15, 2022). In addition, the plaintiffs had to create accounts and provide information such as the desired location and reason for an appointment. Id. In discussing whether the plaintiffs had alleged a legally protected privacy interest, the Ruscow court found that "[a] patient's desired procedure and its underlying reason are not merely administrative." Id. at *13 (emphasis in original). "Whereas 'the fact that an individual's name is on a list released by doctor X or clinic Y' is not medical information, 'the individual's right to privacy encompasses detailed complaints of [his] physical ills." Id., quoting Eisenhower Medical Center v. Superior Court, 226 Cal. App. 4th 430, 435, 172 Cal. Rptr. 3d 165 (Cal. Ct. App. 2014), and County of Los Angeles v. Superior Court, 65 Cal. App. 5th 621, 641, 280 Cal. Rptr. 3d 85 (Cal. Ct. App. 2021). Thus, the court found that one of the plaintiff's allegations were "more than merely administrative; it [was] the substance of her medical needs." Id. And because this information was tied to her PII, the Ruscow court found the plaintiff had alleged "a legally recognizable privacy interest under the California Constitution." Id.

Plaintiff cites to Ruscow as standing for the proposition that online users possess a

"reasonable expectation of privacy over their medical information." (ECF No. 10, p. 6.) While the Court agrees, this broad proposition does little for Plaintiff's position here. Ruscow involved allegations of generic PII along with entering a patient's desired procedure along with the specific underlying reason for the procedure. Here, there are no allegations, outside of hypotheticals, as to what type of chiropractic care or procedure Plaintiff was seeking or what the underlying reason was for seeking such care. Therefore, Ruscow is not persuasive.

At the hearing, the Court asked Plaintiff what was her best case for her position that she has alleged an injury-in-fact, and Plaintiff responded with Ramirez v. LasikMD USA, Inc. No.: 24-cv-2221-CAB-DDL, at *1 (S.D. Cal. Jan. 26, 2026). In that case, the plaintiff alleged that he used the defendant's website to "schedule[] medical consultations and appointments for a medical procedure, specifically laser vision correction." The plaintiff further alleged that he "had an active Facebook account at the time and transmissions of Plaintiff's medical communications with the Website also disclosed his personally identifiable information, including his unique Facebook ID." Id. In discussing standing, the Ramirez court found that the plaintiff had "allege[d] that he used the Website to schedule medical appointments which resulted in the unauthorized tracking technology disclosing his personally identifiable, confidential medical information to Facebook and he received targeted advertisements as a result." Id. at *2. Thus, the court determined that the plaintiff had sufficiently alleged an "unauthorized disclosure of personally identifiable, confidential medical information," which "[was] a sufficiently concrete and particularized harm for standing." Id.

To be sure, Ramierz is a close case; however, the Court finds it to be distinguishable. Chiefly, the allegations, though succinct, included that the plaintiff was seeking a medical appointment for laser correction surgery. In addition to this information being disclosed was the disclosure of the plaintiff's Facebook ID, which included the plaintiff's PII. In contrast, though Plaintiff alleges using Defendant's Website for booking an appointment for chiropractic care, Plaintiff did not include allegations of what procedure she sought or how any condition she had related to a medical procedure. Therefore, the Court finds Ramierz to be not persuasive.

Plaintiff also cites to Milkulsky v. Noom, Inc., (ECF No. 10, p. 5), which first noted that,

"[t]o survive a motion to dismiss, a plaintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest.'" 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023). The Milkulsky court observed that in the complaint, the plaintiff had alleged only that her "personal information" was disclosed to a "digital health and wellness platform that focuses on helping individuals lose weight and lead healthier lives," and thus, the court was unable "to determine whether Plaintiff has a protectable privacy interest in that information." Id. at 860, 864. "For example, if Plaintiff disclosed her basic contact information, such as her email address or phone number, courts have found that type of information does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." Id., citing I.C., 600 F. Supp. At 1049-50. Thus, without more, the court determined that the plaintiff's allegations were "insufficient to allege a concrete harm that is required for Article III standing." Id.

The Court is puzzled by Plaintiff's citation to Milkulsky (indeed, Defendant relies upon it), which appears to be an example of where general allegations were not enough to establish standing, even in the context of a website for digital health and wellness. Moreover, Plaintiff has not explained how her allegations here do more than in Milkulsky. Thus, the Court finds Milkulsky not to be persuasive for Plaintiff's position.

Plaintiff also cites to Doe v. Tenet Healthcare Corp., where the court found that the plaintiffs had "submitted personal information, and Defendants invaded their privacy rights by disclosing their information to third parties without consent through the use of tracking technology embedded on Defendants' Web Properties." 789 F. Supp. 3d 814, 836 (E.D. Cal. 2025). For example, one plaintiff alleged entering "her name, her patient status, the name of her specific treating physician, her browsing history, and the name of the specific medical conditions (pregnancy and childbirth) she was seeking treatment for." Id. at 828. Another plaintiff alleged that she entered "information relating to her inflammation issues and searches for ophthalmologists, orthopedic surgeons, and rheumatologists," as well as that she used two patient portals to review her medical records and enter information "related to her lung health and gastrointestinal issues." Id. A third plaintiff alleged that he searched using terms such as

"Bills," "Billing," and "wound care," as well as using the patient portal to enter "information relating to his wound care and foot ulcer issues." Id. at 829. The final plaintiff alleged that he entered "information related to his anxiety-related issues for which he sought treatment." Id. Thus, the Court found that the plaintiffs had established standing.

While an example of where a court found that a plaintiff's allegations of a PHI violation were sufficient to establish standing, the facts in Doe are well beyond what Plaintiff has alleged here. Each of the plaintiffs alleged entering specific information relating to medical conditions, including pregnancy, lung issues, gastrointestinal issues, wound care, foot ulcers, and anxiety. Further, some plaintiffs alleged entering information such as treating physicians, search histories, and billing. Though Plaintiff has identified that Defendants' Website exists for chiropractic care, the Court is not completely sure how this in and of itself moves Plaintiff's allegations into establishing that she shared her own PHI and/or PII or otherwise establishes a cognizable privacy interest.

Next, in Jones v. Skullcandy, Inc., the court found that the plaintiff alleged that the "Defendant, through use of the Tracking Technologies, has 'received, retained, and benefitted from Plaintiff's and Class Members' personal data' such as '[d]etailed browsing histories and product preferences,' '[s]hopping cart contents and purchase behavior,' '[p]ersonally identifiable information including names, email addresses, and Facebook/Google account identifiers,' '[r]eal-time behavioral data showing consumer interests and purchasing patterns,' and '[d]emographic and psychographic profiles that enable targeted marketing.'" No. 25-cv-01759 JLS (BLM), 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026). Relying on In re Facebook, the court concluded that the plaintiff had thus alleged that the defendant's "tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information." Id., quoting In re Facebook, 956 F.3d at 598; see also Hassid v. Alex and Ani, LLC, 816 F. Supp. 3d 1196 (C.D. Cal. 2026) (noting In re Facebook and finding that allegations of surreptitiously installed tracking software that enabled the defendant to regularly collect PII sufficient to confer standing for California trap and trace law, Cal. Penal Code § 638.51).

It appears that Jones is an example of the application of the Ninth Circuit's holding from

In re Facebook where certain allegations of disclosure of general PII and detailed browsing history that were tied to behavioral data showing consumer interest and demographic and psychographic profiles *may* provide sufficient allegations to demonstrate standing. See Popa, 153 F.4th at 794 (discussing import of In re Facebook following TransUnion). Yet, as should be apparent, that is not what has been alleged here. There are no allegations of detailed browsing history, no allegations of behavioral data, nor allegations of demographic or psychographic profiling. Thus, Plaintiff has not connected the dots to how Jones applies to this case (except in the most general sense).

The last case cited by Plaintiff that the Court will discuss is Crano v. Sojern, Inc., but in Crano, the court found that the defendant's "argument is at bottom that Plaintiff has failed to state a claim—that is a Rule 12(b)(6) motion to dismiss for failure to state a claim, not a question of Article III standing." No. 3:25-cv-02600-JSC, 2025 WL 2689267, at *6 (N.D. Cal. Sept. 19, 2025). Thus, the court denied the motion to dismiss as to lack of standing without prejudice. Id. In any event, the court in Crano nonetheless found that the plaintiff failed to state a claim, for a variety of reasons, where the information alleged to have been entered into the defendant's website was "the relevant hotel ID, hotel name/location, hotel room price, number of rooms, check-in date, check-out date, and that Plaintiff completed her reservations." Id. at *1; see id. at *6-*9.

Plaintiff argues that Crano stands for an example of where a court "den[ied a] motion to dismiss for lack of Article III standing in case where hotel booking information was allegedly disclosed." (ECF No. 10, p. 5.) However, the Crano court did not hold that the plaintiff had Article III standing but that the defendant's argument instead implicated whether the plaintiff had failed to state a claim. Therefore, to the extent Plaintiff relies on Crano for this position, the Court finds Crano to be analytically insufficient.

Plaintiff's remaining caselaw is either inapposite or unpersuasive. See, e.g., Semien v. PubMatic Inc., No. 25-cv-03164-SI, 2026 WL 216333, at *4-*5 (N.D. Cal. Jan. 27, 2026) (noting the plaintiffs' allegations included that the defendant "intercept[ed] communications that [could] include sensitive information like health status and treatment, travel plans, political

affiliation, sexual orientation," as well as "information about credit scores, genres of television viewed, makes and models of vehicles owned, types of preferred food, specific products purchased at the supermarket, and language spoken in the home"); Shah v. MyFitnessPal, Inc., No. 25-cv-04430-PCP, 2026 WL 216334, at *1, *3 (N.D. Cal. Jan. 27, 2026) (discussing that the allegations involved an application informing users that they could opt-out of functional and advertising cookies but the application still placed such cookies notwithstanding that a user attempt to opt-out).

On July 27, 2026, Plaintiff filed a notice of supplemental authority (ECF No. 24), directing the Court to Brayfield v. Advanced Hair Restoration LLC, No. 2:25-cv-11547-ODW (ASx), 2026 WL 2138552 (C.D. Cal. July 24, 2026). In Brayfield, the plaintiff scheduled a hair transplant consultation through the defendant's website, including inputting his "name, email address, phone number, preferred clinic location, and date and time of the appointment into [the defendant's] online form." Id. at *1. Following learning that the defendant's website used tracking technologies to disclose PII to third parties, the plaintiff sued. Id. at *1-*2. The Brayfield court determined, relying on Popa, that in seeking a hair transplant, a reasonable person could find exposure of such information to be highly offensive. Id. at *3. Thus, the Court determined that the plaintiff had established an injury-in-fact. Id.

Though a close case, the Court finds Brayfield distinguishable insofar as the plaintiff explicitly sought a hair transplant consultation, a specific medical procedure. By contrast, Plaintiff here had not alleged anything beyond 'chiropractic care' in terms of services sought. In any event, the Brayfield court did not give a lengthy discussion as to how it determined that getting a hair transplant would be highly offensive as compared to any other procedure. Thus, the Court finds it unpersuasive as well.

Turning to Defendant's case law, the Court begins with Doe I v. Google LLC, where the court found that the plaintiffs alleged no details about the investigation they undertook regarding certain health care provider websites, "nor d[id] they explain how they have determined that their private health information ha[d] been intercepted by Google." 741 F. Supp. 3d 828, 838 (N.D. Cal. 2024). Regarding the plaintiffs' CIPA claim, the court found that it was "not clear whether

Google [was], in fact, reading and learning the contents of the plaintiffs' private health information." Id. at 844. Rather, the court found that the allegations and incorporated materials "[stood] for the proposition that Google does not want to receive private health information and has instructed providers not to send it." Id. Because a CIPA claim requires willful or intentional conduct, the court concluded that the plaintiffs had failed to state a CIPA claim. Id. For standing, the court considered the issue as to the plaintiffs' UCL and California Comprehensive Computer Data Access Fraud Act ("CDAFA") claims. For the UCL claim, the court found that the plaintiffs' allegations "fail[ed] to explain why any alleged acquisition of personal information would necessarily mean that the plaintiffs could not still sell their data in the market they allege exists." Id. at 845. As to the CDAFA claim, while the court recognized that such a claim may be cognizable where a plaintiff alleges damages "of lost storage, disk space, and performance, and their alleged inability to communicate with their providers," the court again noted that "the plaintiffs [made] only a conclusory allegation that they expended time and resources to investigate Google's conduct." Id. at 847. Ultimately, the court dismissed the complaint in its entirety. Id. at 849; see also Rodriguez v. Autotrader.com, Inc., No. 2:24-cv-08735-RGK-JC, 2025 WL 65409, at *2-*3 (C.D. Cal. Jan. 8, 2025) (allegations of "confidential" and "private" information put into website insufficient to confer standing).

To the extent Doe I is applicable to this case, the Court finds it persuasive. Though, the Court notes that the complaint in Doe I appears to have been nearly devoid of any relevant allegations (despite its length). That said, the Court observes that here the central issue is whether Plaintiff has alleged whether she provided PHI and/or PII when signing up for an appointment on Defendant's Website.

Next, in discussing its reliance on Mikulsky, Defendant also discusses I.C. v. Zynga, Inc., where the court found that the plaintiff had alleged to have entered their "email address, phone number, or Facebook or Zynga username" into the defendant's gaming website. 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022). The court was "hard pressed to conclude that basic contact information . . . is private information." Id. Furthermore, the court observed that "in data breach cases, courts must examine the nature of the specific information at issue to determine whether

privacy interests were implicated at all. Otherwise, every data breach (or any situation in which one loses control of information) would confer standing, regardless of whether private information is exposed." Id. at 1050. Thus, the Court concluded that the plaintiffs lacked Article III standing. Id.

As with Doe I, the Court finds I.C. to be somewhat persuasive to the extent it is applicable to this case. To be sure, I.C. involved only PII and in the context of a gaming website. Thus, the difference here being whether such generic information entered into a *chiropractic* website would transform such information into PHI.

In Beltran v. Doctors Medical Center of Modesto, the court found that the plaintiffs essentially alleged variations on that they visited the defendants' website "to search for information related to health conditions or suspected health conditions, and to search for doctors and services to treat actual or potential medical conditions," as well as that the plaintiff also used the "Website's search function . . . to search for information related to symptoms or conditions she was experiencing, as recently as November 2022." No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467, at *3 (E.D. Cal. June 9, 2025). The Beltran court found that "the allegations in Plaintiffs' complaint deficient. Plaintiffs [did] not identify with specificity what information they provided to Defendants via their browsing activity on the Website and thus what information was subsequently transmitted to Meta. Although Plaintiffs' complaint spans over fifty pages, only two pages are dedicated to detailing Plaintiffs' interactions with Defendants' Website." Id. at *5. Furthermore, the court found that the "Plaintiffs [did] not describe the types of searches they conducted or the webpages they viewed, even though their browsing activity on the Website forms the basis for their assertion that their information was purportedly shared with Meta." Id. Because the plaintiffs' claims all stemmed from a theory that the defendants' violated the plaintiffs' privacy rights by collecting their PHI and transmitting it, the court granted the defendants' motion to dismiss in its entirety with leave to amend. Id. at *6.

The Court finds Beltran persuasive to the extent it overlaps in this case. Perhaps closer to the instant case than Doe I, the plaintiffs in Beltran at least alleged some interaction with the subject website. Yet, the court in Beltran was not persuaded that the plaintiffs' had stated a

claim where their allegations remained essentially generic. As to this point, the Court tends to agree with Defendant that Plaintiff's allegations here are somewhat generic. Though Plaintiff identifies certain generic PII she entered into the Website, Plaintiff's only other allegation is that the Website was designed to set appointments for chiropractic care and that she provided "other information related to her appointment booking." (ECF No. 1, ¶ 10.)

Defendant then cites to Harrill v. Emanuel Medical Center, where the plaintiff alleged that she used the defendant's website to "search for information related to health conditions or suspected health conditions, and to schedule treatment for actual or potential medical conditions." No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428, at *2 (E.D. Cal. June 9, 2025). Plaintiff also used the "Website's search function . . . to search for information related to symptoms or conditions she was experiencing, as recently as April 2023." Id. The plaintiff alleged that her use of the website allowed for the transmission of her PHI and PII to Meta without her consent. Id. The court found these allegations to be insufficient to establish a cognizable legal theory. Id. at *4. Specifically, the "Plaintiff d[id] not identify with specificity what information she provided to Defendants via her browsing activity on the Website and thus what information was subsequently transmitted to Meta." Id. "Although Plaintiff's complaint spans over fifty pages, only one paragraph is dedicated to detailing Plaintiff's interactions with Defendants' Website." Id. As with Defendant's other precedent, the Court finds Harrill to be persuasive insofar as it overlaps with the factual allegations here.

With the benefit of the discussion above, the Court has reviewed the allegations and finds that they are insufficient to establish a cognizable privacy interest because it is unclear as to the nature of the information at issue. To be sure, Plaintiff has identified that she accessed Defendant's Website one time for chiropractic care, but Plaintiff has not alleged specific personal or health information she disclosed that implicates a protectable privacy interest. See Wooten v. BioLife Plasma Servs. L.P., 807 F. Supp. 3d 1139, 1143 (E.D. Cal. 2025) (one-time collection of IP and email address on blood plasma donation website insufficient to confer standing). Indeed, these types of cases have proliferated in the courts recently, thus, the Court is struck that Plaintiff fails to allege what "other information related to her appointment booking"

she entered into the Website. Plaintiff argues that she has made clear "that Defendant revealed her patient status in a medical context," but the Court finds Plaintiff has alleged only that disclosed her name, email address, phone number, and choice of clinic, and she accessed the Website only one time. And while Plaintiff has given the Court ample allegations regarding the use of pixels and analytics software, the Court agrees with Defendant that Plaintiff seemingly fails to allege what pages *she* actually viewed, what specific data about *her* was transmitted to any third party, whether any third party actually received or used *her* information, or whether *she* experienced any downstream harm such as targeted advertising or unauthorized disclosure of health information. Generalities are insufficient. Plaintiff's *ipse dixit* arguments to the contrary are unpersuasive.

For the foregoing reasons, the Court finds Plaintiff has failed to plead that she disclosed PHI or that such PHI was transmitted to third parties. Because she has failed to allege a violation of a cognizable privacy interest,[7] Plaintiff has not alleged an injury-in-fact. Therefore, the Court will recommend granting Defendant's motion as to standing.

**C. Failure to State a Claim**[8]

To start, Defendant argues that when booking an appointment Plaintiff was required to check a box accepting Defendant's Privacy Policy and Terms of Service. (ECF No. 8-1, pp. 12-13.) Thus, Defendant asserts that the complaint fails to state a claim because Plaintiff consented to Defendant's use of pixels and analytics tools on its website through its use of headers, and clear concise language detailing the information collected from users of Defendant's website via tracking technologies, cookies, web beacons, platform analytics, and mobile device identifiers. (Id.) Defendant then overlays this argument on Plaintiff's claims, attacking them individually for other reasons as well. Plaintiff opposes, arguing that she did not provide consent and addresses Defendant's other arguments. (ECF No. 10, pp. 7-18.)

---

[7] Likewise, Plaintiff's PII is generic in nature (*e.g.*, not her social security number, bank account information, etc.). Thus, the Court also finds that Plaintiff has not alleged that any of her PII was of a nature to establish a cognizable privacy interest.

[8] While the Court has found that Plaintiff has failed to plead an injury-in-fact, because the Court issues findings and recommendations that may be adopted, modified, or rejected by the assigned District Judge, the Court continues on in the alternative to address the parties arguments as to failure to state a claim.

**1. Issue of Consent to Terms of Service and Privacy Policy**

Though a court may consider the issue of consent on a motion to dismiss where consent is an element of the claim, Lakes v. Ubisoft, Inc., 777 F. Supp. 3d 1047, 1154 (N.D. Cal. 2025), the Court finds such consideration inappropriate in this case. Critical to Defendant's consent argument is an assertion that Plaintiff was "required to click a checkbox agreeing to receive marking and promotional text messages under which it states that 'I also agree to the Privacy Policy and Terms of Conditions.'" (ECF No. 8-2, Declaration of Tyson Cline dated March 30, 2026, ¶ 7.) However, Plaintiff counters that "regardless of the advisal a Website user interacts with, a user has the ability to successfully book an appointment without ever checking the box corresponding to the language that one agrees to the Privacy Policy and Terms and Conditions." (ECF No. 10-1, Declaration of Sarah N. Westcot dated April 13, 2026, ¶ 6.) Both of these positions require looking to declarations outside the of the complaint and implicate a disputed, material fact. Therefore, the Court declines to reach the issue of consent on this motion to dismiss.

At the hearing, the Court inquired of Defendant whether its alternative arguments relied upon consent, and Defendant indicated that notwithstanding the issue of consent, Plaintiff's individual claims nonetheless fail to state a claim.

**2. Claims**

**a. ECPA and Cal. Penal § 631(a)**

The Electronic Communications Privacy Act ("ECPA") makes it unlawful to intentionally intercept an electronic communication. See 18 U.S.C. § 2511(1). To state a claim, a plaintiff "must plausibly allege [a defendant] (1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." Doe I, 741 F. Supp. 3d at 842, citing In re Pharmatrak, Inc., 329 F.3d 9, 18 (1st Cir. 2003). There is an exception to liability for a person who is a party to the communication or "where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). This exception applies unless the interception occurred "for the purpose of committing any criminal or tortious act." Id.

To state a claim under CIPA, Cal Penal Code § 631(a), a plaintiffs must show that (1) by

means of a machine, instrument, or contrivance, a defendant (2) willfully and without the consent of all parties (3) read, attempted to read, or to learn the contents or meaning of any communication, (4) while the communication was in transit (5) to or from any place in California. See Cal. Penal Code § 631(a). Although a criminal statute, § 637.2 gives anyone "injured by a violation of this chapter" a civil cause of action.

Both 18 U.S.C. § 2511 and Cal. Penal Code § 631(a) "contain an exemption from liability for a person who is a 'party' to the communication, whether acting under the color of law or not." In re Facebook, 956 F.3d at 607, quoting 18 U.S.C. § 2511(2)(c), (d), and citing Warden v. Kahn, 99 Cal. App. 3d 805, 160 Cal. Rptr. 471, 475 (1979). Under § 2511(2)(d), "[i]t shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." In re Google Cooke Placement Consumer Privacy Litigation, 806 F.3d 125, 140 (9th Cir. 2015), quoting 18 U.S.C. § 2511(2)(d). The "criminal or tortious purpose must be separate and independent from the act of the recording." Planned Parenthood Fed'n of Am., Inc. v. Newman, 51 F.4th 1125, 1136 (9th Cir. 2022).

In contrast, under Cal. Penal Code § 631(a), "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of ***all parties*** to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal. Code § 631(a) (emphasis added).

The Court begins with the ECPA. Plaintiff does not seemingly dispute that the party-exception rule under the ECPA but argues that notwithstanding the crime-tort exception applies

to her ECPA claim. (ECF No. 10, p. 14.) The Court finds that Plaintiff has not pleaded any tortious or criminal act on the part of Defendant to show that the party-exception rule does not apply. Instead, Plaintiff has made a conclusory allegation that "Defendant intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, invasion of privacy." (ECF No. 1, ¶ 145.) Plaintiff's caselaw in her supplemental brief (ECF No. 23) is unpersuasive insofar as those cases generally involved a violation of HIPAA that necessitated the application of the party-crime exception. See, e.g., R.S. v. Prime Health Services, Inc., No. 5:24-cv-00330-ODW (SPx), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ("[The plaintiff] allege[d] that, at the time it intercepted her communications, [the defendant] had the purpose to disclose private health information without her consent in violation of HIPAA."); In re Meta Pixel Healthcare Litigation, 647 F. Supp. 3d 778, 792, 797 (N.D. Cal. 2022) (involving allegations of HIPPA violations); Kurowski v. Rush System for Health, No. 22-cv-05380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) (discussing "HIPAA exception-to-the-party-exception"); see also B.K. v. Desert Care Network, No. 2:23-cv-05021 SPG (PDx), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) (connecting the plaintiffs' allegations regarding the disclosure of their requests to refill prescriptions and appointment scheduling inquires with identified violations of various state tort claims and state and federal laws).[9]

Furthermore, as explained below, the Court finds that Plaintiff fails to state any of her state-law claims, meaning that there is not criminal or tortious act to tie to Plaintiff's ECPA claim. For these reasons, the Court finds that the party-exception rule applies, and therefore, Plaintiff has not stated a claim under the ECPA. In the alternative, the Court will recommend granting Defendant's motion to dismiss for failure to state a claim as to this aspect.[10]

---

[9] The Court is not persuaded by Smith v. Rack Room Shoes, Inc., where the court applied In re Facebook without discussing the effect of TransUnion as described by the Ninth Circuit in Popa. No. 24-cv-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025).

[10] Because the Court will recommend granting leave to amend, the Court need not address the issue of whether it matters whether Defendant's purpose in collecting information was for monetary and/or marketing gain. See, e.g.,

At the hearing, the parties brought to the Court's attention the evolving caselaw on whether CIPA is applicable to claims involving the use of the internet. The Court allowed the parties to brief the issue, of which both parties took advantage. (ECF Nos. 22, 23.)

There is no binding authority on this issue, and district courts have come out both ways on whether Cal. Penal Code § 631(a) applies to the internet. Compare Garcia v. Truist Financial Corporation, No. 2:25-cv-05753-MEMF-PVC, 825 F. Supp. 3d 1149, 1167-68 (C.D. Cal. Mar. 25, 2026) (finding that, without discussing the issue of whether the § 631(a) applies to the internet, the plaintiff had stated a claim in a case involving the internet) with Casillas v. Six Flags Entertainment Corporation, 812 F. Supp. 3d 1016, 1031 (C.D. Cal. 2025) (finding that first clause of § 631(a) does not apply to the internet but second 'aid and abet' clause does). Upon review of the caselaw offered by the parties, the Court finds that Defendant has the better argument overall.

As to clause one of § 631(a), the Court is persuaded by Judge Bybee's recent concurrence in a Ninth Circuit case disposed by memorandum: Gutierrez v. Converse Inc., No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) (mem.). Judge Bybee observed that the first clause "penalizes the use of any instrument to wiretap (or 'make[ ] any unauthorized connection') 'with any telegraph or telephone wire, line, cable, or instrument.'" Id. at *2 (Bybee, J., concurring), quoting Cal. Penal Code § 631(a). Judge Bybee then noted that "[t]oday, our smartphones not only lack wires, but they also are cameras, atlases, phone directories, music players, weather stations, newspapers, clocks, and more. Most important, smartphones are mini-computers capable of accessing the internet, something the California legislature had never heard of (or could have imagined) in 1967." Id. "If the California legislature wanted to apply § 631(a) to the internet, it could do so by amending that provision or adding to CIPA's statutory scheme." Id. Indeed, it "augmented the statutory scheme in 1985, 1990, and 1992 'to take account of privacy issues raised by the increased use of cellular and cordless telephones.'" Id., quoting Smith v. LoanMe, Inc., 11 Cal. 5th 183, 191, 483 P.3d 869 (Cal. 2021). Thus, in Judge Bybee's view,

---

Lakes v. Ubisoft, Inc., 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025); In re Meta Pixel Healthcare Litig., 647 F. Supp. 3d 778 (N.D. Cal. 2022).

"§ 631(a)'s text, legislative history, subsequent augmentation, and relative ambiguity compared to the CCPA (which explicitly provides recourse for internet privacy violations like this one) compel the conclusion that § 631(a)'s first clause does not apply to the internet. Until and unless the California appellate courts tell us otherwise, or the California legislature amends § 631(a), I refuse to apply § 631(a)'s first clause to the internet." Id. This Court agrees.

Judge Bybee also dispensed with Plaintiff's lead case in support of her position that § 631(a) should apply to claims involving the internet: Javier v. Assurance IQ, LLC, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) (mem.). In that memorandum opinion, the Ninth Circuit stated: "Though written in terms of wiretapping, Section 631(a) applies to Internet communications." Id. at *1. There was no citation or analysis, nor was this issue central to the question before the Ninth Circuit—namely, whether the California Supreme Court would interpret § 631(a) to require prior consent. Id. Thus, this appears to have been an overstatement in a memorandum (which is not precedential), and in any event, it is not well-reasoned dicta which is likewise not precedential. Cetacean Community v. Bush, 386 F.3d 1169, 1173 (9th Cir. 2004) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense."), quoting United States v. Johnson, 256 F.3d 895, 914 (9th Cir 2001) (Kozinski, J., concurring).

As to clause two, Defendant has directed the Court to Doe v. Eating Recovery Center LLC, 806 F. Supp. 3d 1109 (N.D. Cal. 2025), where Judge Chhabria observed that "[t]he language of CIPA is a total mess. . . . The state of affairs with CIPA is untenable. . . . The California Legislature needs to step up." Id. at 1112. After giving due consideration to the parties' arguments as to why clause two would or would not apply to the internet, Judge Chhabria observed that "[t]here is an even more important reason to avoid reading the second clause of Section 631(a)—and, for that matter, any portion of CIPA—too broadly: it is a criminal statute." Id. at 1118. While "most CIPA cases are private civil actions, the interpretations courts adopt while adjudicating those actions could affect the extent to which people or companies are subject to criminal liability." Id. "When the governing standard is set forth in a criminal statute,

it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." Harrott v. County of Kings, 25 Cal. 4th 1138, 1154, 25 P.3d 649 (Cal. 2001); see also Bittner v. United States, 598 U.S. 85, 103 (2023) (Gorsuch J., joined by Jackson, J.) (In the context of a statute that imposes both criminal and civil penalties based on the same statutory term, "the rule of lenity, not to mention a dose of common sense, favors a strict construction."). A similar principle applies to civil statutes that impose punitive civil penalties. See Hale v. Morgan, 22 Cal. 3d 388, 401, 584 P.2d 512 (Cal. 1978) ("Uniformly, we have looked with disfavor on ever-mounting penalties and have narrowly construed the statutes which either require or permit them."); see also California v. Mobil Oil Corporation, 143 Cal. App. 3d 261, 276, 192 Cal. Rptr. 155 (1983) (narrowly construing a statute imposing a "substantial civil penalty" of $500 per violation).

Just as Judge Bybee did, Judge Chhabria noted "that CIPA was enacted in 1967. Its language—with words like 'read' and 'intercept' and 'in transit'—is ill-suited for application to internet communications. The Legislature has never, in over four decades, amended Section 631 to adapt its language to the digital age." Doe, 806 F. Supp. 3d at 1119. Significantly, "California has since adopted other statutes that more clearly speak to the practice of data sharing." Id., citing Cal. Civil Code § 1798.100 et seq. (California Consumer Privacy Act).

Though the parties have given much focus on case discussion in federal district courts, the Court, sitting in diversity, gives the final words to the California Superior Courts that are concurrently dealing with this and similar issues under CIPA. In line with similar reasoning above, in Rodriguez v. Ink American International Group, LLC, the superior court declined to apply Cal. Penal Code § 638.52 to cases involving "website tracking tools." No. 25STCV15350, 2025 Cal. Super. LEXIS 84257, at *8 (Cal. Super. Ct. Dec. 10, 2025). The Rodriguez court observed that "[t]he Legislature's drafting in related provisions confirms that it knows how to regulate internet-based activity when it wishes to do so. Specifically, the Legislature has expressly referenced 'internet' or 'online' communications and services when extending protections beyond traditional telephonic technologies." Id. The court then discussed a persuasive example where the Legislature brought § 632(a) into the internet age by adding, in

2017, Cal. Penal Code § 632.01, which "punishes anyone who violates § 632(a) and then intentionally discloses or distributes, in any manner, in any forum, including, but not limited to, Internet Web sites and social media . . . the contents of a confidential communication with a health care provider . . . ." Id. In further support of its conclusion, the court cited to the statutory canon that "[w]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." Id. at *8-*9, quoting Bradsbery v. Vicar Operating, Inc., 110 Cal. App. 5th 899, 910, 332 Cal. Rptr. 3d 73 (Cal. Ct. App. 2025) (internal quotations and citations omitted).

Similarly, in Blaker v. NetScout Systems, Inc., the superior court refused to apply Cal. Penal Code § 638.51 to internet cases because the statute covered only pen registers and trap and trace devices attached to telephone lines. No. 25STCV31283, 2026 WL 1709143, at *3-*4 (Cal. Super. Ct. May 26, 2026).

The Court finds that these strict constructions of the statutes only strengthen the Doe court's analysis.

In light of the foregoing, the Court finds that, in the alternative, § 631(a) does not apply to cases involving the internet. To be sure, the issue on whether § 631(a), in its entirety, applies to cases involving the internet remains an open question. Thus, the Court will recommend giving Plaintiff leave to amend to again raise the claim for purposes of preservation.

**b. Cal. Penal Code § 632**

Cal Penal Code § 632 creates a cause of action against "[e]very person who, intentionally and without the consent of all parties to a confidential communication . . . records the confidential communication, whether the communication is caried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal Pen Code § 632. "[A] conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." Flanagan v. Flanagan, 27 Cal. 4th 766, 776-77, 41 P.3d 575 (Cal. 2002).

To begin, Defendant's general argument that § 632 does not apply to internet cases is patently untrue. As mentioned above, Cal. Penal Code § 632.01 explicitly brings § 632 into the

realm of internet cases. Defendant has not argued why § 632.01 would not apply here, and the Court will not make an argument on its behalf.

Furthermore, the Court observers that many district courts have perhaps overstated California law in terms of a "presumption that internet cases do not give rise to a reasonable expectation of privacy." (ECF No. 22, p. 6.) In an oft-cited case, California v. Nakai, the California Court of Appeal discussed Cal. Penal Code § 632 in the context of a direct criminal appeal involving explicit internet chats between the defendant and minors. 183 Cal. App. 4th 499, 516, 107 Cal. Rptr. 3d 402 (Cal. Ct. App. 2010). As relevant here, in relation to a denied motion to suppress evidence of a chat, the Nakai court discussed that the defendant had used Yahoo! chat to discuss with another user that he was "afraid of [the other user's] mother discovering their communications, and 'people calling him a child abuser.'" Id. (cleaned up). Based on this, the court determined that the defendant had desired the content of his chats to be confidential. Id. However, the court concluded that nonetheless the defendant did not have a reasonable expectation of privacy insofar that he could expect that the communication would not have been "overheard or recorded." Id. The court cited to Yahoo!'s privacy policy stating that chats may be shared for the purpose of investigating or preventing illegal activities; that Yahoo! warned users that it would archive, print and save chat dialogues; that the defendant was engaged in a conversation online with a virtual stranger; and that the defendant's own fear that he could be caught indicated that the other user's communications may be viewed or intercepted by another party. Id. "In sum, it was not reasonable for defendant to expect the communications to be confidential because the circumstances reflect that the communications could have easily been shared or viewed by Yahoo!, [the other user's] mother, or any computer user with whom [the other user] wanted to share the communication." Id.

The Court finds that Nakai broke no new ground. The California Court of Appeal merely applied Fourth Amendment jurisprudence to a motion to suppress evidence. To be sure, this case involved the then-novel use of internet chats, but the Court finds nowhere did the Nakai court purport to create a 'presumption' in cases involving the internet. Rather, Nakai appears to stand for the continued thoughtful application of Fourth Amendment jurisprudence in determining

whether a person has a reasonable expectation of privacy in the internet age.

Thus, to the extent the cases Defendant cites to summarily rely on this 'presumption,' the Court finds them to be unpersuasive. This Court will not rely on shortcuts, even where well-intended.

With that out of the way, the Court finds that even viewing the facts in the light most favorable to Plaintiff, her allegations do not support that she had an objectively reasonable expectation that the inputting of her name, phone, email, and clinic of choice in seeking a chiropractic service would be confidential. Part of this analysis must include the type of information Plaintiff has alleged, which the Court has found is not PHI. Because the type of information Plaintiff alleges is generic in nature, the Court finds it a stretch to believe she had a reasonable expectation of privacy in it. Furthermore, Plaintiff sought to use Defendant's Website to have another party review information and ostensibly schedule her for an appointment. Without more facts alleged, the Court finds that Plaintiff has failed to state a claim under Cal. Penal Code § 632.

**c. Invasion of Privacy Under California Constitution**

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." In re Facebook, 956 F.3d at 601. Plaintiffs generally possess a reasonable expectation of privacy in their health information. See St. Aubin v. Carbon Health Techs., Inc., 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) ("It is well-settled under California law that, although not absolute, people have a privacy interest in their medical history and information.") (quotations omitted); see also R.C., 733 F. Supp. 3d at 889 (finding that PII paired with "private health information . . . creates a legally protected privacy interest."); Rusow, 2025 WL 4657637, at *13 (finding "a legally recognizable privacy interest"). As to offensiveness, courts are hesitant to resolve "[w]hether an alleged intrusion is highly offensive" at the motion to dismiss stage. See Cousin v. Sharp Healthcare, 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023); see also Roe v. Amgen Inc., 2024 WL 2873482, at *4 (C.D. Cal. June 5, 2024) (finding a factual dispute as to offensiveness); Rusow, 2025 WL 4657637, at *14 (same).

The Court here has no hesitation in finding that this claim fails. For substantially similar reasons discussed in the standing analysis, as well as the discussion regarding § 632, Plaintiff has failed to allege that what she communicated on the Website was PHI or that she otherwise had a reasonable expectation of privacy. Because Plaintiff has failed that measure, she also necessarily fails to meet that any intrusion would be highly offensive. Accordingly, this claim fails.

**D. Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a). In other words, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

The Court finds that leave to amend should be granted in its entirety, except for punitive damages. Plaintiff has not demonstrated undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or futility, nor has Defendant established undue prejudice should leave to amend be granted. That said, the Court will recommend granting leave to amend with the understanding that Plaintiff will do so only to the extent she believes in good faith that she can plead additional factual material that could satisfy the legal standards and deficiencies identified herein. See Fed. R. Civ. P. 15(a)(2); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

/ / /

/ / /

/ / /

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss (ECF No. 8) be GRANTED as follows:

1. Defendant's motion to dismiss be GRANTED as to punitive damages with prejudice;
2. Defendant's motion to dismiss be GRANTED as to standing with leave to amend; and
3. In the alternative, Defendant's motion to dismiss be GRANTED for failure to state a claim with leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 3, 2026**

STANLEY A. BOONE
United States Magistrate Judge